## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FAITH N. CROCKER; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 5:22-cv-757 |
| LLOYD J. AUSTIN, III, in his official | ) | |
| capacity as United States Secretary of | ) | |
| Defense; UNITED STATES | ) | |
| DEPARTMENT OF DEFENSE; FRANK | ) | |
| KENDALL, III, in his official capacity as | ) | |
| United States Secretary of the Air Force; | ) | |
| ROBERT I. MILLER, in his official | ) | |
| capacity as Surgeon General of the United | ) | |
| States Air Force; RICHARD W. SCOBEE, | ) | |
| in his official capacity as Commander of | ) | |
| Air Force Reserve Command; | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff Faith N. Crocker, by and through counsel, and for her Complaint against the Defendants, hereby states as follows:

### INTRODUCTION

1.      Plaintiff is a Senior Airman of the United States Air Force Reserve currently ordered to extended active duty at Barksdale Air Force Base in Bossier City, Louisiana.

2.      Defendants are seeking to force Senior Airman Crocker to violate her conscience by submitting to a COVID-19 vaccine injection against her sincerely held religious beliefs or face the lifelong stain of an involuntary administrative discharge from the United States Air Force. Senior Airman Crocker is patriotic and hard-working airman who dreamed of spending a career serving her country. The daughter of a Baptist pastor, she holds a sincere religious belief

that she must not take the COVID-19 vaccine. Her efforts to vindicate her rights within the military have thus far been systematically and automatically denied and she faces imminent involuntary administrative separation from the military. Such an outcome would not only cut short her unblemished military career, it would end her dreams of finishing her education: the military threatens to cut off and require repayment of tuition assistance and eliminate her eligibility for the GI Bill with a non-honorable discharge. Despite the cost, she will not violate her religious principles, and seeks recourse to this Court to prevent irreparable harm and vindicate her Constitutional rights.

3.      Sadly, Senior Airman Crocker is not alone. Defendants have implemented an accommodation request process that is intended to deny all, or virtually all, religious exemptions from the vaccine mandate. As of this month, approximately 99.6% of religious accommodation requests that have been decided have been denied. As is detailed below, more than 4,637 religious accommodation requests have been denied, and only 17 have been granted.

4.      This action is based upon Defendants' violation of the First Amendment to the Constitution of the United States and the Religious Freedom Restoration Act ("RFRA"). Plaintiff has been denied her fundamental right to the free exercise of religion; and she seeks protection from agency action that is unlawful, contrary to law, and arbitrary and capricious.

5.      Defendants committed each and every act alleged herein under the color of law.

6.      Senior Airman Crocker challenges the policies and actions detailed below on their face and as applied to her.

7.      Defendants' policies and actions have deprived and will continue to deprive Senior Airman Crocker of her rights and guarantees under the Constitution of the United States and federal law.

8.      As is explained in full below, Defendants' policies and actions violate RFRA and are unconstitutional under the First Amendment of the Constitution because they are not supported by a compelling government interest and are not the least restrictive means of serving such a purported interest.

9.      Not only do Defendants' policies and actions fail to serve a compelling government interest, the involuntary separation of Plaintiff from the Air Force would be extremely detrimental to the interests of the United States. The Air Force has invested significantly in the training of Senior Airman Crocker and others who do not choose to take the vaccine on religious grounds, as explained below. Those motivated and trained service members cannot be replaced quickly or easily. Defendants' policies and actions are particularly troubling because they undermine American military strength at a time when the country faces multiple international crises, including the Russian invasion of Ukraine.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution of the United States and federal law.

11.      This Court has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

12.      This Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff.

13.      This Court has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise has been burdened by Defendants.

14.      This Court has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. §§ 701- 706.

15.     This Court has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

16.     This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1 and *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and award costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, and the military workplace and the location in which a substantial part of the events or omissions giving rise to the claims is within this district at Barksdale Air Force Base in Bossier City, Louisiana. Senior Airman Crocker resides in the district in Bossier City, Louisiana. The proximity of the Shreveport courthouse to her base and abode makes that venue the most convenient for Plaintiff.

## PLAINTIFF

18.     Plaintiff Faith Crocker is a Senior Airman in the United States Air Force Reserve. She serves as an Aircraft Ordinance Systems Mechanic with 307 Aircraft Maintenance Squadron at Barksdale Air Force Base.

19.     On or about October 17, 2021, Senior Airman Crocker filed a request for a religious accommodation to be exempted from the Air Force's COVID-19 vaccination requirement. This request was accompanied by a memorandum from her Chaplain after an interview with him. He wrote, "In light of my interview with [Senior Airman] Faith Crocker, and her demonstrated consistency of faithful living, with consideration from my vantage point, I

believe her beliefs to be sincerely held, and therefore, I recommend granting the waiver request to the greatest extent possible, as the requirement places a significant burden on the members right to exercise her faith." On information and belief, Senior Airman Crocker's immediate chain of command supported her religious exemption request and believed she could be a valuable member of the team even without a COVID-19 vaccine injection.

20.    On or about November 29, 2021, her request was disapproved by Defendant Richard W. Scobee, Commander of United States Air Force Reserve Command, who nonetheless wrote that he did not doubt "the sincerity of [her] beliefs."

21.    On or about December 4, 2021, Senior Airman Crocker filed an appeal to the denial of her religious accommodation request. Senior Airman Crocker explained in detail her sincerely held beliefs that she "should have the right to control [her] own body." Citing to Scripture that her body is a temple of God and the command in Genesis to be fruitful and multiply, Senior Airman Crocker wrote,

> I do not take my religion lightly. I firmly believe that I am the guardian of the temple of God and I am eternally responsible for what I [choose] to put into my body. . . I need to be healthy and consider my body for the future. I may not be able to be fruitful and multiply if the vaccine were to damage my health. . . I am fully aware that I am seen as just an airman who the Air Force is comfortable with losing. My dedication and work ethic is not replaceable. I abide by the rules and have never had any disciplinary issues. I also believe it is right to stand up with what I believe in. That being said, I will not allow anyone to disregard my religion. I am asking for assistance in defending the Constitution that I swore to defend when I raised my right hand.

22.    On or about February 25, 2022, Senior Airman Crocker's religious accommodation request appeal was denied by Defendant Robert I. Miller, Surgeon General of the Air Force.

23.    On or about March 8, 2022, Senior Airman Crocker was told via email by her commanding officer, Lieutenant Colonel Victoria M. Dewhirst, USAFR, that she had five

calendar days to "1) take the vaccine 2) submit retirement request if eligible 3) refuse vaccine in writing." March 14, 2022, marked the fifth calendar day.

24.     On or about March 14, 2022, Senior Airman Crocker retained counsel and submitted a response to her commander stating: "As of today I will not be getting the Covid-19 vaccination. That being said, I love my country and will not give up on the opportunity to serve but I also love my God and will honor him in all that I do."

25.     Senior Airman Crocker faces imminent involuntary administrative separation.

## DEFENDANTS

26.     Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members, including Plaintiff. Secretary Austin is sued in his official capacity.

27.     Defendant United States Department of Defense ("DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

28.     Defendant Frank Kendall, III, is the United States Secretary of the Air Force. Secretary Kendall is being sued in his official capacity.

29.     Defendant Robert I. Miller is the Surgeon General of the United States Air Force. He is the Air Force official who is ultimately responsible for determining the outcome of religious accommodation appeals with respect to COVID-19 vaccinations. Lieutenant General Miller is being sued in his official capacity.

30.     Defendant Richard W. Scobee is the Commander of Air Force Reserve Command. He is the senior officer responsible for implementing policies governing the United States Air Force Reserve. Lieutenant General Scobee is being sued in his official capacity.

## FACTUAL BACKGROUND

### Defendants' Vaccine Mandate

31.     On or about July 29, 2021, President Joseph Biden directed the DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), http://www.whitehouse.gov/briefing-room/statesments-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actions-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann Meyers & Howard Altman, *Pentagon, Reacting to Biden Order, Working on Plan for Mandatory COVID-19 Vaccinations*, MILITARY TIMES (Oct. 21, 2021), http://www.militarytimes.com/news/your-military/2021/07/29/biden-orders-pentagon-to-consider-mandatory-covid-19-vaccination/.

32.     On August 24, 2021, Defendant Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" ("the DoD Vaccine Mandate"). A true and correct copy of the DoD Vaccine Mandate is attached as Exhibit A to this Complaint.

33.     The DoD Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19.

34.     The DoD Vaccine Mandate states that all service members who previously contracted COVID-19 and now have active antibodies against the virus are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

35.     The DoD Vaccine Mandate provides that DoD will only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration ("FDA") in accordance with FDA-approved labeling and guidance.

36.     The DoD Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated.

37.     The DoD Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD Vaccine Mandate until the trial is complete.

38.     The DoD Vaccine Mandate states that the Department of Defense will implement the DoD Vaccine Mandate consistent with DoD Instruction 205.02, "DoD Immunization Program," dated July 23, 2019.

39.     The DoD Vaccine Mandate further states, "Those with previous COVID-19 infections are not considered fully vaccinated."

40.     The DoD Vaccine Mandate states that the Military Departments, including the Air Force, Air Force Reserve, and Air National Guard, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

41.     The DoD Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

42.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership position, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

43.     On September 3, 2021, Secretary Kendall issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members" (the "Air Force Vaccine Mandate") (collectively, the DoD Vaccine Mandate and the Air Force Vaccine Mandate are the "Vaccine Mandates"). A true and correct copy of the Air Force Vaccine Mandate is attached as Exhibit B to this Complaint.

44.     The Air Force Vaccine Mandate directs all Air Force active-duty personnel to become fully vaccinated by November 2, 2021, and all United States Air Force Reserve personnel and Air National Guard personnel to become fully vaccinated by December 2, 2021, unless exempted.

45.     The Air Force Vaccine Mandate states that "[o]nly COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA) will be utilized for mandatory vaccinations unless a military member volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency Use Authorization or is included in the World Health Organization's Emergency Use Listing."

46.     The Air Force Vaccine Mandate states: "Individuals with previous COVID-19 infections or positive serology are not considered fully vaccinated and are not exempt."

47.    On December 7, 2021, Secretary Kendall issued a memorandum entitled "Supplemental Coronavirus Disease 2019 Vaccination Policy" ("Air Force Supplemental Policy"). A copy of the memorandum is attached as Exhibit C to this Complaint.

48.    The Air Force Supplemental Policy states that failure to comply with the DoD Vaccine Mandate will result in immediate adverse consequences for regular members of the Air Force, to wit, "Refusal to comply with the vaccine mandate without an exemption will result in the member being subject to initiation of administrative discharge proceedings."

49.    The Air Force Supplemental Policy states: "Service members separated due to refusal of the COVID-19 vaccine will not be eligible for involuntary separation pay and will be subject to recoupment of any unearned special or incentive pays."

50.    The Air Force Supplemental Policy (in Attachment 1 of the Policy) states that Traditional Reserve members who fail to comply with the Vaccine Mandate and have not submitted an accommodation request "will be placed in a no pay/no points status and involuntarily reassigned to the Individual Ready Reserve (IRR). Active Guard and Reserve (AGR) members who fail to comply and have not submitted an accommodation request "will have their AGR tour curtailed and [sic] involuntarily reassigned to the IRR." They will be subject to "recoupment for any unearned special, incentive pays or certain training."

51.    Other consequences for failure to comply with the Vaccine Mandate, which have been threatened upon Plaintiff, include: involuntary separation, relief for cause from leadership position, removal from promotion lists, inability to attend certain military training and education schools, loss of leadership positions, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service members, and loss of leave and travel privileges for both official and unofficial purposes.

52.     Defendants have discretion in granting religious accommodations. *See, e.g.,* Department of Defense Instruction ("DODI") 1300.17, Religious Liberty in the Military Services, dated September 1, 2020.

53.     Defendants have discretion in granting medical and administrative accommodations.

54.     On November 30, 2021, Defendant Austin issued a memorandum entitled "Coronavirus Disease 2019 Vaccination for Members of the National Guard and Ready Reserve" ("National Guard and Reserve Mandate"). A true and correct copy of the National Guard and Reserve Mandate is attached as Exhibit D to this Complaint.

55.     The National Guard and Reserve Mandate states that unless exempted, members of the National Guard must be vaccinated "to participate in drills, training and other duty."

56.     The National Guard and Reserve Mandate states: "No Department of Defense funding may be allocated for payment of duties performed under title 32 for members of the National Guard who do not comply with Department of Defense COVID-19 vaccination requirements."

57.     The National Guard and Reserve Mandate states: "No credit or excused absence shall be afforded to members who do not participate in drills, training, or other duty due to failure to be fully vaccinated against COVID-19."

58.     As reported by the Air Force on March 1, 2022, the Air Force had granted 1,294 medical exemptions and 1,686 administrative exemptions from the DoD Vaccine Mandate. *See* DAF COVID-19 Statistics – Mar. 1, 2022, Secretary of the Air Force Public Affairs, available at https://www.af.mil/News/Article-Display/Article/2950923/daf-covid-19-statistics- mar-1-2022/.

59.     As reported by the Air Force on March 1, 2022, the Air Force had denied 4,637 religious accommodation requests regarding the DoD Vaccine Mandate (3,110 initial requests denied and 1,051 appeals denied). The Air Force had granted only 17 religious accommodation requests. *See id.*

60.     Defendants have denied 99.6% of religious accommodation requests. *See id.*

61.     On information and belief, those 17 cases in which requests were granted were ones in which the service member was already imminently approaching retirement or other voluntary separation from the service. Therefore, those grants of accommodation were of little significance and possibly done to create the illusion of a process that is virtually certain to result in denial.

62.     As reported by the Air Force on March 1, 2022, 96.2 % of all Air Force personnel (including active duty, reserves, and national guard) have been fully vaccinated against COVID-19. *Id.*

63.     Senior Airman Crocker has spent years in training and service, at personal cost and sacrifice, to attain the status she has achieved to serve her country. The United States Air Force has spent an extraordinary amount of money to provide highly specialized training to other Air Force personnel affected by this policy nationally. According to a Rand study commissioned by the United States Air Force, the cost of training an Air Force pilot of an RC-135 is approximately $5.5 million for each pilot. *See* Michael G. Mattock, Beth J Asch, James Hosek & Michael Boito, *The Relative Cost-Effectiveness of Retaining Versus Accessing Air Force Pilots*, Rand    Corporation    (2019),    https://www.rand.org/content/dam/rand/pubs/research_reports/RR2400/RR2415/RAND_RR2415.pdf

64.     The monetary costs of training replacement personnel to replace those forced out due to this policy will run into the hundreds of millions of dollars. In 2011, the United States Government Accountability Office ("GAO") published a comprehensive report analyzing the costs associated with separating 3,664 trained service members in the context of subsequently revoked Department of Defense policies and found the costs to be substantial.

> According to GAO's analysis of Defense Manpower Data Center data, 3,664 servicemembers were separated under DOD's homosexual conduct policy from fiscal years 2004 through 2009. . . Using available DOD cost data, GAO calculated that it cost DOD about $193.3 million ($52,800 per separation) in constant fiscal year 2009 dollars to separate and replace the 3,664 servicemembers separated under the homosexual conduct policy. This $193.3 million comprises $185.6 million in replacement costs and $7.7 million in administrative costs. The cost to recruit and train replacements amounted to about $185.6                                                                 million.

Government Accountability Office, *Military Personnel: Personnel and Cost Data Associated with Implementing DoD's Homosexual Conduct Policy* (Jan. 2011), https://www.gao.gov/assets/gao-11-170.pdf. The numbers being reported for religious service members unwilling to receive the vaccine are many multiples greater than those lost to this prior policy and will ultimately cost far more.

65.     Senior Airman Crocker is in excellent physical condition. She is statistically unlikely to suffer significant consequences or hospitalization from contracting COVID-19.

66.     During the course of the pandemic, Senior Airman Crocker has practiced social distancing, frequent handwashing, masking, regular COVID-19 testing, and/or working remotely as directed by her commanding officers.

67.     Senior Airman Crocker has and can continue to perform her work at the highest level while practicing a combination of social distancing, frequent handwashing, masking, regular COVID-19 testing, and/or working remotely, depending on her duties.

68.     Thousands of Air Force service members with approved medical or administrative accommodations are being permitted to work in person and perform their duties without facing adverse employment consequences, involuntary separation from the Air Force, or early retirement.

**Plaintiff's Sincerely Held Religious Objections to COVID-19 Vaccinations**

69.     Senior Airman Crocker objects to receiving a COVID-19 vaccination based on her sincerely held religious beliefs.

70.     Senior Airman Crocker is a member of the traditional Baptist denomination of the Christian faith. Her father is a Baptist pastor.

71.     Senior Airman Crocker's sincerely held religious beliefs forbids her from receiving the COVID-19 vaccine for a variety of reasons based upon her Christian faith as revealed through the Holy Bible and prayerful discernment. In her appeal, Senior Airman Crocker pointed to several of the Bible's commands. A true and correct copy of her Religious Accommodation Request and Appeal is attached hereto as Exhibit E to this Complaint.

72.     Senior Airman Crocker holds to the sincere religious belief that the human body is God's temple, which is fearfully and wonderfully made by God, and that she must not put anything into her body that God has forbidden or that would alter the functions of her body such as by inducing the production of a spike protein in a manner not designed by God or altering her DNA.

73.     In accordance with her sincerely held religious belief, Senior Airman Crocker carefully monitors what she puts into her body, and she is compelled to avoid anything that adversely alters or may modify her body's natural functions in a manner not designed by God.

74. The COVID-19 vaccines use mRNA technology, which causes human cells to produce a spike protein they would not normally produce. *See* Center for Disease Control, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (Mar. 4, 2021).

75. Despite repeated denials by the Centers for Disease Control that the COVID-19 vaccines could alter a person's DNA, a recently published, peer-reviewed study out of Sweden "showed that SARS-CoV-2 RNA can be reverse-transcribed and integrated into the genome of human cells." Markus Alden *et al.*, *Intracellular Reverse Transcription of Pfizer BioNTech COVID-19 mRNA Vaccine BNT162b2 in vitro in Human Liver Cell Line*, Current Issues in Molecular Biology 2022, 44(3), 1115-1126, (Feb. 25, 2022), available at https://doi.org/10.3390/cimb44030073.

76. Senior Airman Crocker holds the religious belief that she is the steward of her body's health. The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue. *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html.

77. On January 24, 2022, a United States Senate subcommittee held a roundtable on the efficacy, safety, and overall response to COVID-19. At that roundtable, an attorney representing three Department of Defense whistleblowers, Thomas Renz, "revealed disturbing information regarding dramatic increases in medical diagnoses among military personnel." Letter from Senator Ron Johnson to Secretary of Defense Lloyd Austin (Feb. 1, 2022) available at

https://www.ronjohnson.senate.gov/services/files/FB6DDD42-4755-4FDC-BEE9-50E402911E02. Military whistleblowers alleged that based on data from the Defense Medical Epidemiology Database (DMED), there has been "a significant increase in registered diagnoses . . . for miscarriages, cancer, and many other medical conditions in 2021 compared to a five-year average from 2016-2020," including a 472% increase in "female infertility" and a 437% increase in "ovarian dysfunction." *Id.*

78.     U.S. Army Lieutenant Colonel (LTC) Theresa Long, M.D., M.P.H., F.S., submitted a sworn affidavit, under penalty of perjury, as a whistleblower under the Military Whistleblower Protection Act, 10 U.S.C. §1034, in support of a Motion for Preliminary Injunction in *Robert, et al. v. Austin, et al.*, 1:21-cv-02228-RM-STV (D. Colo., filed Aug. 17, 2021).

79.     In her affidavit, LTC Long expressed her expert opinion that:

"None of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity than an infection-recovered person."

"All three of the [Emergency Use Authorization] EUA COVID-19 vaccines (Comirnaty is not available)…are more risky, harmful, and dangerous than having no vaccine at all, whether a person is COVID-recovered or facing a COVID infection."

"Direct evidence exists and suggests that all persons who have received a COVID-19 vaccine are damaged in their cardiovascular system in an irreparable and irrevocable manner."

80.     LTC Long does not hold an isolated opinion. For example, in a sworn declaration, Dr. Jayanta Bhattacharya and Dr. Martin Kulldoff – professors of medicine at Stanford

University and Harvard Medical School, respectively – expressed similar conclusions. *Zywicki v. Washington*, 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021). Dr. Hooman Noorchashm, M.D., Ph.D.—who is well-published in the medical field and has held multiple prestigious faculty appointments—reached a similar conclusion in his own sworn declaration. He concluded that "[a] series of epidemiological studies have demonstrated to a reasonable degree of medical certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the most effective vaccines currently available." *Zywicki v. Washington*, 1:21- cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021).

81.    Senior Airman Crocker holds the sincere religious belief that all life is sacred, from conception to natural death, and that abortion is the impermissible taking of an innocent life in the womb. Senior Airman Crocker has heard that there may be a connection between the testing, development, and production of the COVID-19 vaccine and the use of aborted fetal cell lines.

82.    Senior Airman Crocker believes that receiving a COVID-19 vaccine that was tested, developed, or produced using aborted fetal cell lines would force her to violate her sincerely held religious beliefs by causing her to participate in the abortion enterprise, which she believes to be immoral and repugnant to God. *See, e.g.*, Annette B. Vogel et al., *BNT162b Vaccines Protect Rhesus Macaques from SARS-Cov-2*, NATURE (Feb. 1, 2021), https://www.nature.com/articles/s41586021-03275-y (explaining that the BNT162b vaccines (the Pfizer/BioNTech vaccine also known as Comirnaty) were tested using HEK293T aborted fetal cells); Meeting of the Vaccines and Related Biological Products Advisory Committee, U.S. Food and Drug Administration (May 2016, 2001) (Statement of Dr. Alex van der Eb, emeritus

professor at the University of Leiden) ("The fetus [from whom the HEK 293 cell lines were acquired], as far as I can remember was completely normal. Nothing was wrong. The reasons for the abortion were unknown to me. I probably knew it at the time, but it got lost, all this information.").

83.    Senior Airman Crocker, prior to learning about the production or testing of the COVID-19 vaccines using aborted fetal cell lines, was unaware that such cell lines were used in the production or testing of any medications or vaccines. Senior Airman Crocker, having learned that other medications may be tested or produced using aborted fetal cell lines, has since committed to refusing to take any medication that is thus developed or tested.

84.    Senior Airman Crocker believes she contracted and recovered from COVID-19, and likely has antibodies tests showing that she has acquired natural immunity.

85.    Senior Airman Crocker is a religion student at Liberty University and holds the sincere religious belief that, upon seeking guidance from God through prayer as to whether to receive a COVID-10 vaccine, God directed her not to do so.

86.    Fidelity to her religious beliefs is more important to Senior Airman Crocker than her military career, but the Constitution of the United States prohibits Defendants from forcing her to choose between her beliefs and her military service to our country.

87.    The DoD Vaccine Mandate has lowered Senior Airman Crocker's morale as a service member because she has been forced to choose between her sincerely held religious beliefs and her military career. The DoD Vaccine Mandate has lowered the morale of other service members for the same reasons.

**DoD and Air Force Regulations Recognize Religious and Medical Accommodations**

**for Immunizations under RFRA and the Free Exercise Clause Generally**

88.     Department of Defense Instructions 1300.7, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that service members have the right to observe the tenets of their religion or to observe no religion at all.

89.     DODI 1300.17 provides that it is DoD policy that "Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance."

90.     DODI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment."

91.     DODI 1300.17 provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

(1)     The military policy, practice, or duty is in furtherance of a compelling governmental interest; and

(2)     It is the least restrictive means of furthering that compelling governmental interest."

92.     Department of Air Force Instruction (DAFI) 52-201, ¶ 1.3, states: "A member's expression of sincerely held beliefs may not be used as the basis for any adverse personnel action, discrimination, or denial of promotion; and may not be used as a basis for making schooling, training, or assignment decisions."

<strong>Defendants' Refusal to Grant Religious Exemptions</strong>

93.     Plaintiff is requesting religious accommodations or exemptions from Defendants' Vaccine Mandates that set forth Plaintiff's sincerely held religious beliefs regarding the COVID-19 vaccines.

94.     Defendants have implemented a system of processing religious accommodation requests whereby all, or virtually all, such requests are denied without being considered individually.

95.     On information and belief, Defendants' communications with service members rejecting their religious accommodation requests have used identical, pre-written, "boilerplate" language to deny their requests. Air Force Reserve personnel have received virtually identical letters from Lt. Gen. Richard W. Scobee, Commander of the Air Force Reserve Command, denying their initial requests. The letters did not mention or reflect the consideration of any of the specific circumstances of individual service members. The letters did not include any explanation of why the individual circumstances of each service member warranted rejection.

96.     The virtually identical rejection letters from Lt. Gen. Scobee state: "After carefully considering the specific facts and circumstances of your request, the recommendation of your chain of command and the MAJCOM Religious Resolution Team, I disapprove your request for religious exemption." The virtually identical rejection letters from Defendant Lt. Gen. Scobee also state: "I do not doubt the sincerity of your beliefs. However, when evaluating your

20

request for religious exemption, I also had to consider the risk to our mission." On information and belief, Air Force Reserve service members have not received an individualized explanation of why their initial religious accommodation requests were specifically rejected.

97.     On information and belief, active-duty Air Force personnel have received similar rejection letters from Gen. Michael A. Minihan, Commander of the Air Mobility Command. Those letters include identical, pre-written "boilerplate" language. Similar to the Air Force Reserve letters, they all state: "After careful consideration of the specific facts and circumstances, I disapprove your request for accommodation. Regardless of whether you have a sincerely held religious belief, the Air Force has compelling government interests in ensuring mission accomplishment, of which health and safety are necessary elements, and the prevention of COVID-19." The rejection letters that active-duty Air Force personnel have received from Gen. Minihan also include identically-structured fill-in-the blank sections, which state the following: "I have disapproved your request for accommodation from the aforementioned immunization requirement based on the following: First, due to the nature of your duties and your position as a [insert position], the Air Force has a compelling government interest in ensuring the health and continued mission accomplishment of [insert description of unit]. Second, your duties, which include [insert duties, using the words 'hands-on' and 'team'] making teleworking not realistically possible."

98.     Senior Airman Crocker's appeal has been denied. As a result, her involuntary separation from the Air Force Reserve is imminent, absent rapid injunctive relief from this Court.

99.     Senior Airman Crocker believes that her requests have been rejected without any consideration of the specific information included in her religious accommodation requests.

100.    All of the rejection letters received by service members rely on the falsified assumption that receiving a vaccination prevents a person from acquiring or spreading COVID-19. The assumption that receiving a vaccination prevents a person from acquiring or spreading COVID-19 has been proven false. This was publicly acknowledged by the Director of the Centers for Disease Control and Prevention ("CDC") in January 2022. *See* Eric Sykes, "CDC Director: COVID Vaccines Can't Prevent Transmission Anymore," MSN (Jan. 10, 2022), available at https://www.msn.com/en-us/health/medical/cdc-director-covid-vaccines-cant-prevent-transmission-anymore/ar-AASDndg.

**Defendants' Punishment of Plaintiff for Merely Filing Religious Accommodation Requests**

101.    According to the accommodation request form created by Defendants, merely making a request for a religious accommodation "may have an adverse impact on [the requesting service member's] deployability, assignment, and/or international travel."

102.    The uncertainty about her future, constant questions from peers, and denials of training, travel, leadership, and deployment opportunities have been detrimental to Senior Airman Crocker's career.

103.    This adverse workplace treatment for merely requesting a religious exemption amounts to punishment for asserting one's religious beliefs. Like the termination that she faces, it is also a punishment that violates both RFRA and the Free Exercise Clause of the First Amendment.

104.    The DoD Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated.

105.     The DoD Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD Vaccine Mandate until the trial is complete.

106.     The DoD Vaccine Mandate states that DoD will implement the DoD Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.

107.     The DoD Vaccine Mandate states that the Military Departments, including the Air Force, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

108.     The DoD Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

109.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

## FIRST CAUSE OF ACTION

## Violation of Plaintiff's Rights under the

## Religious Freedom Restoration Act 42 U.S.C. § 2000bb et seq.

110.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

111.    The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000b et seq. ("RFRA"), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

112.    RFRA broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

113.    In *Burwell v. Hobby Lobby Stores*, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (internal citation omitted).

114.    The Supreme Court has articulated repeatedly that courts may not question whether sincerely-held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

115.    The Supreme Court of the United States has held that no state official may second-guess whether a person's sincerely held religious beliefs are correct, reasonable, or sufficiently based in relevant scripture. Doing so impermissibly entangles the state official with religion, in violation of the Establishment Clause of the First Amendment of the Constitution of the United States. *See Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 396, (1990).

116.    RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

## Application of Strict Scrutiny

117.    Defendants' Vaccine Mandate fails strict scrutiny.

118.    Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

119.    Senior Airman Crocker has sincerely held religious beliefs that she cannot receive the mandated COVID-19 vaccine.

120.    Defendants' Vaccine Mandates substantially burden Senior Airman Crocker's sincerely held religious beliefs by requiring her to take an action – injecting a COVID-19 vaccine into her body – that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

121.    A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on the person to modify his or her behavior and to violate his or her beliefs.

122.    The DoD Vaccine Mandate imposes on Senior Airman Crocker and all service members whose religious beliefs prevent them from receiving COVID-19 vaccination the choice between violating their religious beliefs and ending their military careers and livelihood.

123.    The adverse actions to which plaintiff is subject may include: involuntary discharge, court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership position, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of

money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

124.    Senior Airman Crocker has already suffered and continues to suffer adverse employment actions merely for requesting relief that is protected by RFRA.

125.    Defendants do not have a compelling government interest in refusing to grant religious exemptions and requiring Senior Airman Crocker to violate her sincerely held religious beliefs by taking a COVID-19 vaccine.

126.    Defendants do not have a compelling government interest in refusing to grant religious exceptions to the DoD Vaccine Mandate when they have granted thousands of medical and administrative exemptions to the DoD Vaccine Mandate.

127.    Allowance of thousands of accommodations for reasons other than religious ones demonstrates that Defendants can tolerate the risk posed by some service members remaining unvaccinated—and that Defendants are treating religious members of the military differently, inconsistent with RFRA and the First Amendment.

128.    Defendants' delay in imposing the DoD Vaccine Mandate for more than a year after vaccines were widely available also belies any claim that their interest in enforcing the Mandate is compelling.

129.    Defendants do not have a compelling government interest in refusing to offer religious exemptions to the COVID-19 vaccine mandate when the government itself has admitted through the CDC that vaccinated individuals can still spread COVID-19.

130.    Defendants may not rely on generalized or broadly formulated interests to satisfy the compelling interest test.

131.    Defendants must establish that they have a compelling interest in denying each individual service member an accommodation. Asserting a compelling interest in maximizing the vaccination of Air Force personnel does not satisfy the compelling interest test.

132.    The letters denying Reserve personnel their religious accommodation requests are conclusory and cite only generalized interests in maximizing the vaccination of Air Force personnel, stating, "the Department of Defense and the Department of the Air Force have a compelling government interest in maintaining a healthy and ready military force through vaccination." On information and belief, the equivalent letters to other service members similarly cite only generalized interests.

133.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because the DoD has operated for approximately two years during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

134.    Defendants possess multiple less restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular COVID-19 testing. These methods are already being used to facilitate Plaintiff's performance of her duties now. Defendants could also accept positive tests for COVID-19 antibodies (indicating the presence of natural immunity) as a substitute for a COVID-19 vaccination. All of these approaches constitute less restrictive means.

135.    Indeed, if Defendants are concerned about COVID-19 affecting their personnel, it would need to implement these other mitigation protocols *even if* service members receive the vaccine because, as is well known by now, vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief:

COVID-19   Vaccines   and   Vaccination"   (last   updated   September   15,   2021),

http://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

136.    Defendants' denials of Senior Airman Crocker's religious accommodation request

fails to provide any explanation of why she cannot continue to fulfill her duties in the manner she

has done since the COVID-19 pandemic began through masking, remote teleworking, physical

distancing, and regular testing.

137.    Requiring the vaccination of a service member who possesses natural immunity,

as Senior Airman Crocker believes she does, does nothing to reduce the risk of COVID-19

infection to other service members.

138.    RFRA requires that Defendants grant an accommodation in every case where

denying one does not pass strict scrutiny.

139.    Defendants' policies and actions have been challenged in multiple federal district

courts which have ruled in favor of service members and taken a dim view of the government's

claims.

140.    The Northern District of Texas granted a request for a preliminary injunction in a

COVID-19 vaccine mandate challenge by religious Navy SEALs, noting that adverse actions

against those servicemembers substantially burdened their religious beliefs and that the

military's purported compelling interest clearly failed to overcome this substantial burden. In

granting a preliminary injunction, the Court noted,

> Our nation asks the men and women in our military to serve, suffer, and sacrifice.
> But we do not ask them to lay aside their citizenry and give up the very rights
> they have sworn to protect . . . [the service members] in this case seek to vindicate
> the very freedoms they have sacrificed so much to protect. The COVID-19
> pandemic provides the government no license to abrogate those freedoms. There
> is no COVID-19 exception to the First Amendment. There is no military
> exclusion from our Constitution.

*U.S. Navy Seals 1–26, et al v. Biden*, Civil Action No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS

2268, at *2-3 (N.D. Tex. Jan. 3, 2022) (internal citations omitted).

141.    The Middle District of Florida granted a preliminary injunction in favor of two

servicemembers threatened with separation, noting in its Order,

> The record in this action establishes that the two service members are very likely
> to prevail on their claim that their respective branch of the military has wrongfully
> denied a religious exemption from COVID-19 vaccination. The record creates a
> strong inference that the services are discriminatorily and systematically denying
> religious exemptions without a meaningful and fair hearing and without the
> showing required under RFRA (while simultaneously granting medical
> exemptions and permitting unvaccinated persons to continue in service without
> adverse consequence). One struggles to imagine a wholesome and lawful
> explanation for the results evidenced in this record. The military is well aware of
> the frailty of their arguments in defense of their practices.

*Navy Seal 1 v. Biden*, No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 29716, at *15

(M.D. Fla. Feb. 2, 2022).

142.    Similarly in this case, Defendants' Vaccine Mandates violate Senior Airman

Crocker's Constitutional and statutorily protected rights.

143.    Because of Defendants' policy and actions, Senior Airman Crocker has suffered,

and will continue to suffer, irreparable harm. She is entitled to equitable relief.

144.    Senior Airman Crocker is entitled to a declaration that Defendants violated her

rights under RFRA to freely exercise her religion and an injunction against Defendants' policy

and actions. Senior Airman Crocker is also entitled to the reasonable costs of this lawsuit,

including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

## Violation of Plaintiff's First Amendment Right to the Free Exercise of Religion

145.    Plaintiff repeats and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

146.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to achieve a compelling government interest.

147.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

148.    Plaintiff has sincerely held religious beliefs that prohibit her receipt of presently-available COVID-19 vaccines.

149.    Defendants' Vaccine Mandates substantially burden Senior Airman Crocker's sincerely held religious beliefs by requiring her to take an action (receiving a COVID-19 vaccine injection) that would violate those religious beliefs or suffer adverse employment action and financial harm.

150.    The adverse actions to which Senior Airman Crocker is subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

151.    Defendants' Vaccine Mandates are not a neutral and generally applicable law or policy. The policy vests DoD and Navy decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

152.    Defendants' Vaccine Mandates fail strict scrutiny.

153.    Defendants do not have a compelling government interest in requiring Senior Airman Crocker to violate her sincerely held religious beliefs by taking a COVID-19 vaccine.

154.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for well over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

155.    Furthermore, the well-reported drop in the COVID-19 case count further undermines the government's claims of a compelling need.

156.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

157.    Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

158.    Accordingly, Defendants' Vaccine Mandates violate Plaintiff's rights to the free exercise of religion under the First Amendment.

159.    Because of Defendants' policy and actions, Senior Airman Crocker has suffered and continues to suffer irreparable harm. She is entitled to equitable relief.

160.    Senior Airman Crocker is entitled to a declaration that Defendants violated her First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions. Additionally, she is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### Violation of Plaintiff's Rights Under the Administrative Procedure Act

161.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

162.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the Vaccine Mandates complained of herein are each a "rule" under the APA, id. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," id. § 704.

163.    The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The Vaccine Mandates, as applied to Plaintiff, are not in accordance with law.

164.    RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

165.    DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Air Force Service members.

166.    Unless the agency satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the agency action violates RFRA.

167.    The APA prohibits agency actions that are "contrary to constitutional right." 5 U.S.C. § 706(2)(B). The Vaccine Mandates, as applied to Plaintiffs, are contrary to their constitutional rights under the Free Exercise Clause of the First Amendment.

168.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

169.    The APA prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Vaccine Mandates and Defendants' actions implementing the Vaccine Mandates are arbitrary, capricious, and an abuse of discretion for several reasons.

170.    BUMEDINST 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, establishes DoD-wide policy and quality standards for immunization and chemoprophylaxis.

171.    BUMEDINST 6230.15B, Paragraph 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative.

172.    Among the numerous medical exemptions available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provide a basis for medical exemption.

173.    BUPERSINST 1730.11A provides that "[e]ach request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range

of facts and circumstances relevant to the specific request. Requests to accommodate religious practices should not be approved or denied simply because similar requests were approved or denied."

174.    Defendants' Vaccine Mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring her to take an action (receiving a COVID-19 vaccine injection) that would violate those religious beliefs or suffer adverse employment action and financial harm.

175.    The adverse actions to which Plaintiff is subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes

176.    Defendants do not have a compelling government interest in requiring Plaintiff to violate her sincerely held religious beliefs by taking a COVID-19 vaccine.

177.    Defendants' Vaccine Mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

178.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

179.    For the reasons discussed above, the Vaccine Mandates are not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) as they violate Plaintiff's rights under RFRA.

180.    For the reasons discussed above, the Vaccine Mandates exceed statutory authority within the meaning of 5 U.S.C. § 706(2)(C) as they violate Plaintiff's rights under the First Amendment.

181.    By exempting service members from the mandates for medical reasons and exempting service members participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19, while refusing to provide similar exemptions for service members who request exemptions for religious reasons, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

182.    Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

183.    Plaintiff has no adequate remedy at law.

184.    Absent injunctive and declaratory relief against the Vaccine Mandates, Plaintiff will have been and continue to be harmed.

185.    The Court should declare the Vaccine Mandates and each of the Defendants' decisions invalid and set them aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and provide Plaintiff with the following relief:

(A)    A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the First Amendment to the United States Constitution;

(B)      A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Religious Freedom Restoration Act;

(C)      A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Administrative Procedure Act;

(D)      A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Complaint;

(E)      An order declaring unlawful and setting aside Defendants' vaccination policies;

(F)      Actual damages, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), in the amount of pay Plaintiff will lose as a result of Defendants' discriminatory vaccine policies under the Religious Freedom Restoration Act;

(G)      Nominal damages against Defendants in their individual capacities, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), for the violation of Plaintiff's rights under the Religious Freedom Restoration Act;

(H)      Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(I)      All other further relief to which Plaintiff may be entitled.

Respectfully submitted this 20th day of March 2022.


/s/ _____
James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone : (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiff