# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FAITH N. CROCKER; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Civil Action No. 5:22-cv-00757 |
| LLOYD J. AUSTIN, III, in his official | ) |
| capacity as United States Secretary of | ) |
| Defense; UNITED STATES | ) |
| DEPARTMENT OF DEFENSE; FRANK | ) |
| KENDALL, III, in his official capacity as | ) |
| United States Secretary of the Air Force; | ) |
| ROBERT I. MILLER, in his official | ) |
| capacity as Surgeon General of the United | ) |
| States Air Force; RICHARD W. SCOBEE, | ) |
| in his official capacity as Commander of | ) |
| Air Force Reserve Command; | ) |
| | ) |
| Defendants. | ) |

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Faith N. Crocker, by and through counsel, and pursuant to Federal Rule of Civil Procedure 65, respectfully moves this Court for a preliminary injunction against Defendants' vaccine mandate.

In support of this Motion, Senior Airman Crocker relies on the following:

1.    The Brief in support of this Motion, filed contemporaneously herewith;

2.    The Complaint, ECF No. 1; and

3.    All further evidence necessary to support this Motion, filed hereafter or presented at any hearing on this Motion.

Senior Airman Crocker respectfully requests the following relief:

1.      A preliminary injunction against Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them that prohibits them from applying their facially discriminatory policies against her.

2.      A preliminary injunction against Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them that prohibits them from applying their practice of:

      a.  systematic denial of religious accommodation requests for COVID-19 vaccination;

      b.  differential treatment of accommodation requests for the COVID-19 vaccination for secular reasons and accommodation requests for religious reasons;

      c.  and retributive or negative action against servicemembers who make or have made religious accommodation requests; and

3.      A preliminary injunction against Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them that prohibits them from making Plaintiff's non-receipt of COVID-19 vaccination or Plaintiff's submission of a request for a religious accommodation from COVID-19 vaccination a basis for adverse actions against Plaintiff, including, but not limited to: separation from service; recoupment of education or training expenses; loss or delay of promotion, training opportunities, or retirement; and loss of bonuses, pay, or benefits.

Senior Airman Crocker requests a waiver of any bond required by Federal Rule of Civil Procedure 65(c) as these issues involve the free exercise of religion, there is no money at stake in issuance of the injunction, and no financial impact on the Defendants. *See Kaepa, Inc. v. Achilles*

*Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (recognizing district courts have discretion to waive the bond requirement of Rule 65(c)); *see also Gordon v. City of Hous.*, 79 F. Supp. 3d 676, 695 (S.D. Tex. 2015) (waiving Rule 65 bond in First Amendment lawsuit).

**WHEREFORE**, Senior Airman Crocker respectfully requests that the Court grant this Motion for Preliminary Injunction against the Defendants.

Respectfully submitted this 28th day of March 2022.

/s/ *James Baehr*

James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone : (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiff

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel were unable to confer with Defendants' counsel regarding this Motion because no counsel has appeared for Defendants. However, once counsel for Defendants file appearances, Plaintiff's counsel will confer with them.

/s/ *Jim Baehr*

James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone : (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2022, I electronically filed the foregoing document through the Court's ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

/s/ *Jim Baehr*
_____
James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone : (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| FAITH N. CROCKER; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 5:22-cv-00757 |
| LLOYD J. AUSTIN, III, in his official | ) | |
| capacity as United States Secretary of | ) | |
| Defense; UNITED STATES | ) | |
| DEPARTMENT OF DEFENSE; FRANK | ) | |
| KENDALL, III, in his official capacity as | ) | |
| United States Secretary of the Air Force; | ) | |
| ROBERT I. MILLER, in his official | ) | |
| capacity as Surgeon General of the United | ) | |
| States Air Force; RICHARD W. SCOBEE, | ) | |
| in his official capacity as Commander of | ) | |
| Air Force Reserve Command; | ) | |
| | ) | |
| Defendants. | ) | |

## [PROPOSED] ORDER ON PRELIMINARY INJUNCTION

Having reviewed the submissions of the Parties, and otherwise being fully advised in the premises, it is hereby **ORDERED AND ADJUDGED**:

1.      Plaintiff's Motion for Preliminary Injunction is **GRANTED**;

2.      Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them are **PRELIMINARILY ENJOINED** from application of their facially discriminatory policies:

3.      Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them are **PRELIMINARILY**

**ENJOINED** from application of their practice of: (a) across-the-board denial of religious accommodation requests for COVID-19 vaccination; (b) differential treatment of accommodation requests for the COVID-19 vaccination for secular reasons and accommodation requests for religious reasons; and (c) retributive or negative action against servicemembers who make or have made religious accommodation requests;

4.      Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them are **PRELIMINARILY ENJOINED** from making Plaintiff's non-receipt of COVID-19 vaccination or Plaintiff's submission of a request for a religious accommodation from COVID-19 vaccination a basis for adverse actions against Plaintiff, including, but not limited to: separation from service; recoupment of education or training expenses; loss or delay of promotion, training opportunities, or retirement; and loss of bonuses, pay, or benefits; and

5.      Because Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order raises issues concerning the free exercise of religion, because there is no money at stake in issuance of this injunction, and because issuance of this injunction will have no financial impact on Defendants, the bond requirement of Rule 65(c) of the Federal Rules of Civil Procedure is **WAIVED**.

**SO ORDERED** on this _____ day of _____, 2022.

_____

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

FAITH N. CROCKER;                          )
                                           )
Plaintiff,                                 )
                                           )
v.                                         )
                                           )   Civil Action No. 5:22-cv-00757
LLOYD J. AUSTIN, III, in his official      )
capacity as United States Secretary of     )
Defense; UNITED STATES                     )
DEPARTMENT OF DEFENSE; FRANK               )
KENDALL, III, in his official capacity as  )
United States Secretary of the Air Force;  )
ROBERT I. MILLER, in his official          )
capacity as Surgeon General of the United  )
States Air Force; RICHARD W. SCOBEE,       )
in his official capacity as Commander of   )
Air Force Reserve Command;                 )
                                           )
Defendants.                                )

<u>**TABLE OF CONTENTS**</u>

**INTRODUCTION**.................................................................................................................**1**

Type chapter title (level 2) ...............................................................................................2

    Type chapter title (level 3) .........................................................................................3

**ARGUMENT** ......................................................................................................................**1**

**I. Plaintiff is Likely to Succeed on Her Claim that Denial of Her Religious Accommodation Request Violates the Religious Freedom Restoration Act and the First Amendment.** ......................................................................................................................1

*A. Absent religious accommodations, the vaccine mandate substantially burdens Plaintiff's religious exercise without satisfying RFRA's demanding compelling-interest standard.* .......1

    *1. Defendants' COVID-19 vaccine mandate substantially burdens Plaintiff's sincerely held religious beliefs* ...............................................................................................................2

    *2. Defendants cannot demonstrate a compelling interest that justifies burdening Plaintiff's religious beliefs and practices, or that the mandate is the least restrictive means of achieving their purported interest* .................................................................3

*B. Even if Defendants could show a compelling interest in continued efforts to reduce the spread of COVID-19 among service members, they cannot demonstrate that requiring Plaintiff to undergo vaccination in violation of her religious beliefs is the least restrictive means to achieve it.* ...................................................................................................................5

*C. The vaccine mandate is not neutral nor generally applicable, and it fails strict scrutiny under the First Amendment.* ....................................................................................................9

**II. The Remaining Preliminary Injunction Factors Favor Relief.** ...................................11

*A. Plaintiff is suffering irreparable injury.* .......................................................................11

*B. The balance of harms and the public interest in protecting civil liberties weigh in favor of an injunction.* ....................................................................................................................12

**CONCLUSION** ...............................................................................................................**15**

## <u>TABLE OF AUTHORITIES</u>

42 U.S.C. § 2000bb-1 ................................................................................................ 1, 3, 4

42 U.S.C. § 2000bb-2 ........................................................................................................ 3

*BST Holdings, LLC v. OSHA*,
    No. 21-60845, 2021 U.S. App. LEXIS 33698, 2021 WL 5279381 (5th Cir. Nov. 12, 2021)
    .............................................................................................. 4,  5,  6,  7, 8, 12

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ................................................................................... 2, 3, 4

*Byrum v. Landreth*,
    566 F.3d 442 (5th Cir. 2009) ................................................................................ 1

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993) .......................................................................................... 11

*Cont'l Training Servs., Inc. v. Cavazos*,
    709 F. Supp. 1443 (S.D. Ind. 1989), aff'd in part, rev'd in part, 893 F.2d 877 (7th Cir. 1990)  8

*Does 1–3 v. Mills*,
    No. 21A90, 2021 WL 5027177 (U.S. Oct. 29, 2021) ................................... 3, 5, 8, 11

*Elrod v. Burns*,
    427 U.S. 347 (1976) .......................................................................................... 11

Federal Rule of Civil Procedure 65 ................................................................... 1, 2,  3

*Fulton v. City of Phila.*,
    141 S. Ct. 1868 (2021) ............................................................................. 9, 10, 11

*Gordon v. City of Hous.*,
    79 F. Supp. 3d 676 (S.D. Tex. 2015) ...................................................................... 3

*Hobbie v. Unemployment Appeals Com.*,
    480 U.S. 136 (1987) ............................................................................................ 2

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ........................................................................... 12

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ............................................................................................ 2

*Jackson Women's Health Org. v. Currier*,
    760 F.3d 448 (5th Cir. 2014) .............................................................................. 13

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) ............................................................................... 2-3

*Navy Seal 1 v. Biden*,

No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 29716 (M.D. Fla. Feb. 2, 2022) ..... 14

*Nken v. Holder*,
 556 U.S. 418 (2009) ..................................................................................... 12

*Opulent Life Church v. City of Holly Springs Miss.*,
 697 F.3d 279 (5th Cir. 2012) ................................................................... 11-12

*Order on Application for a Partial Stay, Austin v. U.S. Navy SEALs 1-26*,
 595 U.S. ____ (2022) ..................................................................................... 14

*Roman Catholic Diocese v. Cuomo*,
 141 S. Ct. 63 (2020) (per curiam) ................................................................ 3

*Sherbert v. Verner*,
 374 U.S. 398 (1963) ...................................................................................... 2

*Tandon v. Newsom*,
 141 S. Ct. 1294 (2021) ...................................................................... 9, 10, 11

*Tanzin v. Tanvir*,
 141 S. Ct. 486 (2020) .................................................................................... 2

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
 450 U.S. 707 (1981) ...................................................................................... 2

*Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*,
 No. 2:21-CV-01781-SPL, 2021 WL 5162538 (D. Ariz. Nov. 5, 2021) .................. 6-7, 10, 11

*U.S. Navy Seals 1–26 v. Biden*,
 Civil Action No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 2268 (N.D. Tex. Jan. 3, 2022) . 14

*Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*,
 546 U.S. 418 (2006) ...................................................................................... 3

## MEMORANDUM IN SUPPORT OF MOTION
## FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Senior Airman Faith N. Crocker is being forced to choose between serving her God and serving her country. She is threatened with imminent separation from the military and seeks recourse to this Court for immediate injunctive relief to preserve the status quo during the pendency of her complaint. The movant seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Plaintiff satisfies each of these factors.

## ARGUMENT

**I. Plaintiff is Likely to Succeed on Her Claim that Denial of Her Religious Accommodation Request Violates the Religious Freedom Restoration Act and the First Amendment.**

*A.      Absent religious accommodations, the vaccine mandate substantially burdens Plaintiff's religious exercise without satisfying RFRA's demanding compelling-interest standard.*

Senior Airman Crocker has been informed that holding to her religious convictions will cost her career and incur potentially crippling debt in the form of recouped payments for tuition assistance. Her requests for an exemption or accommodation from the vaccine mandate have fallen on deaf ears and she faces imminent irreparable injury in separation from the service with a non-honorable discharge. The vaccine mandate and lack of accommodation, the threat to Plaintiff's job and finances, all constitute ongoing violations of RFRA, 42 U.S.C. § 2000bb-1.

*1. Defendants' COVID-19 vaccine mandate substantially burdens Plaintiff's sincerely held religious beliefs.*

As described in the Complaint, Senior Airman Crocker sincerely believes that it would violate her religious convictions for her to receive a COVID-19 vaccine. Defendants may not question the reasonableness of these religious beliefs. Nor may they question Plaintiff's convictions regarding how their beliefs apply to vaccination. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724–25 (2014); *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715 (1981). Defendants' vaccine mandate thus offers Plaintiff a "choice" that is not really a choice: violate your religious beliefs or forfeit the honor of serving your country, suffer the stigma of involuntary separation, lose your livelihood, and potentially incur massive debt. This plainly constitutes a substantial burden on the exercise of religion.

The government substantially burdens the exercise of religion when it forces a choice "between following the precepts of [one's] religion and forfeiting benefits," as well as when it forces a choice between "abandoning one of the precepts of her religion in order to accept work" *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *see Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020) ("RFRA sought to . . . restore the pre-Smith 'compelling interest test' by 'provid[ing] a claim . . . to persons whose religious exercise is substantially burdened by government.'"); *see also Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (choice between engaging in conduct that violates religious beliefs or facing discipline "easily satisfied" substantial burden test). More broadly formulated, it imposes a substantial burden whenever it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Thomas*, 450 U.S. at 718; *accord Hobbie v. Unemployment Appeals Com.*, 480 U.S. 136, 141 (1987). The threatened loss of a job—not to

mention the threatened recoupment of thousands of dollars in training expenses clearly fits this rubric.

   2.     *Defendants cannot demonstrate a compelling interest that justifies burdening Plaintiff's religious beliefs and practices, or that the mandate is the least restrictive means of achieving their purported interest.*

   Because Defendants have substantially burdened, and continue to substantially burden, Plaintiff's religious exercise, they must "demonstrate[ ] that application of the burden to the [Plaintiff]—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). This provision places the burden of proof on the government. *See Id.* § 2000bb-2(3). Moreover, it requires the government to demonstrate not just a generalized necessity of applying its vaccine mandate to service members, but rather it must demonstrate that imposing its mandate on this particular plaintiff is the least restrictive means to further a compelling governmental interest. *Id.* § 2000bb-1(b) ("Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."); *see Burwell*, 573 U.S. at 726–27; *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). Defendants cannot make this high showing.

   While "[s]temming the spread of COVID-19" is a compelling interest, *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam), "this interest cannot qualify as such forever." *Does 1–3 v. Mills*, No. 21A90, 2021 WL 5027177, at *4 (U.S. Oct. 29, 2021) (Gorsuch, J., dissenting from denial of application for injunctive relief). We are now over two years into the

COVID-19 pandemic, and vaccines have been available for well over a year. There is no "purported 'emergency' that the entire globe has now endured for nearly two years, and which [DoD] itself spent . . . months responding to" BST Holdings, LLC v. OSHA, No. 21-60845, 2021 U.S. App. LEXIS 33698, 2021 WL 5279381 (5th Cir. Nov. 12, 2021), at *3.

Defendants must also show not only that there is a compelling interest but that the compelling interest is applicable to the person. 42 U.S.C. § 2000bb-1(b). That is, a general interest in the abstract is not compelling. *See Burwell*, 573 U.S. at 726 ("RFRA, however, contemplates a more focused inquiry: It requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law "to the person"—the particular claimant whose sincere exercise of religion is being substantially burdened. This requires us to look beyond broadly formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants—in other words, to look to the marginal interest in enforcing the [religious burden] in these cases." (internal citations and quotation marks omitted)). Defendants have made no attempt to assert a compelling interest in any marginal interest in requiring Senior Airman Crocker to receive a vaccination.

For the past year, multiple COVID-19 vaccines have been widely available, and the number of available treatments continues to grow. Indeed, as of March 22, 2022, 98% of the active-duty Air Force and over 96% of the total force are fully vaccinated. Dep't of the Air Force COVID-19 Statistics, https://www.afrc.af.mil/News/Article/2959594/daf-covid-19-statistics-march-22-2022/. And the government has authorized various treatments for hospitalized and non-hospitalized COVID patients. U.S. Dep't of Health & Human Servs., "Possible Treatment Options for COVID-19," https://combatcovid.hhs.gov/possible-treatment-options-covid-19; U.S. Food & Drug Admin., "Know Your Treatment Options for COVID-19,"

https://www.fda.gov/consumers/consumer-updates/know-your-treatment-options-covid-19.
Additional promising treatments, including treatments that substantially reduce severe symptoms
that may accompany COVID-19 infection, are on the way. Press Release, "Pfizer's Novel
COVID-19 Oral Antiviral Treatment Candidate Reduced Risk of Hospitalization or Death by
89% in Interim Analysis of Phase 2/3 Epic-HR Study" (Nov. 5, 2021),
https://www.pfizer.com/news/press-release/press-release-detail/pfizers-novel-covid-19-oral-
antiviral-treatment-candidate. Furthermore, Senior Airman Crocker believes she possesses
natural immunity after exhibiting COVID-like symptoms indicating a prior infection, and thus, a
COVID-19 vaccination will lack even minimal—much less compelling—marginal interest.

"[C]ivil liberties face grave risks when governments proclaim indefinite states of
emergency." *Does 1–3*, 2021 WL 5027177, at *3 (Gorsuch, J., dissenting); *see also BST
Holdings, LLC*, 2021 WL 5279381, at *3 (stating the same with respect to the federal
government's OSHA vaccine mandate). This Court should reject any governmental assertion of
compelling interest that amounts to a proclaimed indefinite state of emergency.

B.      *Even if Defendants could show a compelling interest in continued efforts to
reduce the spread of COVID-19 among service members, they cannot demonstrate that requiring
Plaintiff to undergo vaccination in violation of her religious beliefs is the least restrictive means
to achieve it.*

First, the Air Force cannot show that achieving a 100% vaccinated force at the expense of
the First Amendment is necessary because they have already allowed unvaccinated individuals
without religious objections to continue serving. 98% of active-duty Air Force service members
are vaccinated against COVID-19. And while Air Force personnel may come into contact with
members of the public who are unvaccinated, Defendants can hardly argue that a 100%

vaccination rate is a magic bullet against COVID-19 infection, as vaccinated individuals can contract and transmit the virus. Ctrs. for Disease Control & Prevention, "Possibility of COVID-19 Illness after Vaccination" (updated Nov. 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html ("People who get vaccine breakthrough infections can be contagious."). Given that fact, it strains credulity to assert that Plaintiff's non-vaccination—or even the non-vaccination of 2-4% of all service members, for that matter—will make or break Defendants' ability to combat the virus within the Air Force. *See BST Holdings*, 2021 WL 5279381, at *7 n.19 ("the [OSHA vaccine] Mandate cannot prevent vaccinated employees from spreading the virus in the workplace, or prevent unvaccinated employees from spreading the virus in between weekly tests").

Defendants know they don't need a 100% vaccination rate to protect their force because they already granted several medical exemptions for the COVID-19 vaccination with no accompanying detriment to those service members, who remain fully deployable. Defendants also chose to categorically exempt all personnel participating in vaccine trials, regardless of whether they received the vaccine or a placebo: an entire class of service members, including some who lack any COVID-19 immunity. This across-the-board exemption dooms any argument that Defendants have a compelling interest in forcing Plaintiff to undergo vaccination in violation of her religious beliefs. *See Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, No. 2:21-CV-01781-SPL, 2021 WL 5162538, at *7 (D. Ariz. Nov. 5, 2021) (granting preliminary injunction under state RFRA against application of public college's vaccination policy to religious students, noting that "Defendant cannot justify a policy that burdens Plaintiffs' religious beliefs by asserting an interest in stemming the spread of COVID-19 and protecting patients, while at the same time providing accommodations to similarly situated students that undermine the very

same interest"); *see also BST Holdings*, 2021 WL 5279381, at *7 ("underinclusiveness of this sort is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling.'" (citing *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 542–46 (1993)).

Second, Defendants have undermined their position by their own inaction. During the past year, multiple COVID-19 vaccines have been widely available under Emergency Use Authorizations. U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum" (Dec. 11, 2020), https://www.fda.gov/media/ 144416/download (EUA for Pfizer vaccine); U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum" (Dec. 18, 2020), https://www.fda.gov/media/144673/download (EUA for Moderna vaccine); U.S. Food & Drug Admin., "Emergency Use Authorization (EUA) for an Unapproved Product: Review Memorandum" (Feb. 27, 2021), https://www.fda.gov/media/146338/download (EUA for Johnson & Johnson vaccine). The Department of Justice's Office of Legal Counsel concluded in a published opinion that "section 564 of the [Food, Drug, and Cosmetic Act] does not prohibit public . . . entities from imposing vaccination requirements, even when the only vaccines available are those authorized under EUAs." U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip opinion), https://www.justice.gov/olc/file/1415446/download. But Defendants did not impose their vaccine mandate until now, waiting until approximately a year after the availability of vaccines – a time period during which service members' immunity increased due to rising vaccination and natural immunity, and the need for additional vaccination decreased. This inaction undercuts the

assertion that an urgent and compelling government interest requires Plaintiff to violate her sincere religious convictions now. *See BST Holdings*, 2021 WL 5279381, at *3 (noting that the President's and OHSA's equivocation and delay in issuing a national vaccine mandate for some employers undercut any interest the government had in imposing the mandate); *Cont'l Training Servs., Inc. v. Cavazos*, 709 F. Supp. 1443, 1453 (S.D. Ind. 1989) (concluding that a federal department's "substantial delay of over a year" had undermined its "assertion of a compelling interest"), aff'd in part, rev'd in part, 893 F.2d 877 (7th Cir. 1990). In short, Defendants' imposition of their mandate on Plaintiff "in these circumstances doesn't just fail the least restrictive means test, it borders on the irrational." *Does 1–3*, 2021 WL 5027177, at *4 (Gorsuch, J., dissenting).

Defendants also cannot justify imposing the vaccine mandate on a Plaintiff who has natural immunity from COVID-19. As the Fifth Circuit recently recognized when adjudicating motions to stay the OSHA vaccine mandate, "[a] naturally immune unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus." *BST Holdings*, 2021 WL 5279381, at *6. And the Navy's own regulations recognize acquired immunity as a substitute for vaccination. Among the numerous medical exemptions previously available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provided a basis for a medical exemption. BUMEDINST 6230.15B. Despite the BUMEDINST provision that allows for natural immunity, the Air Force singled out the COVID-19 vaccine in a manner that does not allow for natural immunity. Service members are only considered fully vaccinated two weeks after receiving the second dose of FDA-approved, FDA Emergency Use Authorized, or World Health Organization Emergency Use Listed vaccines. Thus, only for the COVID-19 vaccination has the military departed from its

existing policy and refused to recognize natural immunity. The Air Force cannot show a compelling justification for this departure from existing regulations. And given this aberration among existing policies recognizing natural immunity, the Air Force cannot show that requiring a Plaintiff with natural immunity to receive the COVID-19 vaccination in violation of her religious beliefs is the least restrictive means for achieving COVID-19 immunity among service members.

     C.    *The vaccine mandate is not neutral nor generally applicable, and it fails strict scrutiny under the First Amendment.*

Defendants' vaccine mandate triggers strict scrutiny under the Free Exercise Clause of the First Amendment because it is not neutral and generally applicable. "A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021) (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990)). ""where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason."" *Id.* (quoting *Smith*, 494 U.S. at 884). "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* In addition, "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Defendants' vaccine mandate fails all three of these tests for neutrality and general applicability.

First, it provides "a mechanism for individualized exemptions" that "invites the government to consider the particular reasons for a person's conduct." *Fulton*, 141 S. Ct. at 1877. It does so by inviting individual applications for exemptions. *See Thoms*, 2021 WL 5162538, at *9 (concluding that a college's COVID-19 vaccine policy was not neutral and generally applicable, triggering strict scrutiny under the First Amendment, because "Defendant's process for reviewing religious accommodation requests appears to be the type of individualized mechanism that triggers strict scrutiny under Fulton").

Second, Defendants' vaccine mandate prohibits religious conduct (abstaining from a vaccine due to religious convictions) while permitting secular conduct (abstaining from a vaccine for medical reasons or for participation in a clinical trial). While almost no religious exemptions have been or will be granted, Defendants have granted an across-the-board exemption to vaccine trial participants and have granted at least some medical exemptions. *See id.* (concluding that a college's COVID-19 vaccine policy was not neutral and generally applicable, triggering strict scrutiny under the First Amendment, because "Plaintiffs presented evidence . . . that Defendant has made at least one exception" to the policy). And Defendants cannot show that an unvaccinated religious adherent undermines their asserted interests any more than an unvaccinated trial participant or an unvaccinated service member with medical contraindications to vaccination. *See Id.* at *7.

Third, Defendants' mandate treats comparable secular activity—non-receipt of the vaccine due to participation in a clinical trial or due to a medical contraindication—more favorably than non-receipt of a vaccine for religious reasons. "Comparability is concerned with the risks various activities pose, not the reasons why" people engage in those activities. *Tandon*, 141 S. Ct. at 1296. Here, the activities are precisely the same: non-vaccination. Only the reasons

for the activities differ. And "[w]here the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id.* . Because Defendants cannot do so here, "precautions that suffice for" vaccine trial participants and those with medical exemptions "suffice for religious exercise too." *Id.* at 1297. "The [government] cannot 'assume the worst when people [exercise their religion] but assume the best when people [engage in secular activities].'" *Id.* (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020) (*per curiam*)).

Because Defendants' vaccine mandate is not neutral and generally applicable, it triggers strict scrutiny under the First Amendment. *See Fulton*, 141 S. Ct. at 1877; *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531–32 (1993). And for all the reasons previously discussed, Defendants' imposition of their mandate on Plaintiff does not just fail strict scrutiny, "it borders on the irrational." *Does 1–3*, 2021 WL 5027177, at *4 (Gorsuch, J., dissenting); *see Thoms*, 2021 WL 5162538, at *10 (under First Amendment, granting preliminary injunction against application of public college's vaccination policy to religious students, noting that "it is unlikely that Defendant has a compelling interest in denying Plaintiffs an exception to the Policy, particularly when it has provided exceptions to other students for non-religious reasons").

## II.     The Remaining Preliminary Injunction Factors Favor Relief.

*A.     Plaintiff is suffering irreparable injury.*

Plaintiff has demonstrated irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The same is true of the loss of RFRA rights. *See Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) ("[The Elrod v. Burns] principle

applies with equal force to the violation of [Religious Land Use and Institutionalized Persons Act ("RLUIPA")] rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise." In the closely related RFRA context (the predecessor statute to RLUIPA), courts have recognized that this same principle applies."); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) ("Hobby Lobby and Mardel have established a likely violation of RFRA. We have explicitly held—by analogy to First Amendment cases—that establishing a likely RFRA violation satisfies the irreparable harm factor."). Recently, the Fifth Circuit recognized that the OSHA vaccine mandate for employers with 100 or more employees "threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)." *BST Holdings*, 2021 WL 5279381, at *8. Here, Plaintiff not only faces the loss of her job as an Airman, but the infringement of her religious liberty rights under RFRA and the First Amendment, which are irreparable injuries as a matter of law. *Id.* (citing *Elrod*, 427 U.S. at 373). In addition, Defendants have threatened Plaintiff with the dishonor of involuntary separation without an honorable discharge that will follow her for the rest of her life. All of these injuries— past, ongoing, and imminent—cannot be remedied by a later-issued court order. *See BST Holdings*, 2021 WL 5279381, at *8 (discussing similar compliance and monetary injuries as sufficiently irreparable).

> **B.     *The balance of harms and the public interest in protecting civil liberties weigh in favor of an injunction.***

The balance of harms and public interest likewise strongly favor an injunction. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction will not disserve the public interest where "it will prevent constitutional

deprivations." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.")). The analysis does not change simply because the government invokes its interest in stemming the spread of COVID-19 among service members. As already explained, Defendants' actions do not merely fail strict scrutiny; they are irrational. Having boasted of a vaccination rate of 99%, having waited eleven months to impose their mandate, and having granted secular exemptions—including an across-the-board exemption for vaccine trial participants, regardless of their immunity status—Defendants cannot now argue that the public interest requires vaccination of Senior Airman Crocker in violation of her religious convictions, the Constitution, and federal statutory law. Nor can they argue that the public interest requires the government to compound these constitutional, statutory, and dignitary harms with involuntary separation, court martial proceedings, loss of deployability, and the various other adverse actions that Defendants have imposed and threatened.

For these reasons, other Courts that have analyzed this exact issue have granted preliminary injunctions. The Northern District of Texas granted a request for a preliminary injunction in a COVID-19 vaccine mandate challenge by religious Navy SEALs, noting that adverse actions against those servicemembers substantially burdened their religious beliefs and that the military's purported compelling interest clearly failed to overcome this substantial burden. In granting a preliminary injunction, the Court noted,

> Our nation asks the men and women in our military to serve, suffer, and sacrifice. But we do not ask them to lay aside their citizenry and give up the very rights they have sworn to protect . . . [the service members] in this case seek to vindicate the very freedoms they have sacrificed so much to protect. The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution.

13

*U.S. Navy Seals 1–26 v. Biden*, Civil Action No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 2268, at *2-3 (N.D. Tex. Jan. 3, 2022) (internal citations omitted).[1]

The Middle District of Florida granted a preliminary injunction in favor of two servicemembers threatened with separation, noting in its Order,

> The record in this action establishes that the two service members are very likely to prevail on their claim that their respective branch of the military has wrongfully denied a religious exemption from COVID-19 vaccination. The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence). One struggles to imagine a wholesome and lawful explanation for the results evidenced in this record. The military is well aware of the frailty of their arguments in defense of their practices.

*Navy Seal 1 v. Biden*, No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 29716, at *15 (M.D. Fla. Feb. 2, 2022).

In light of these other judicial determinations, a preliminary injunction is entirely appropriate in this case. Senior Airman Crocker faces irreparable injury through an involuntary administrative separation absent judicial action.

---

[1] On March 25, 2022, the United States Supreme Court lifted part of this temporary injunction. However, the Court only lifted a part of that preliminary injunction regarding deployability and military assignments of non-vaccinated individuals: "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." Order on Application for a Partial Stay, *Austin v. U.S. Navy SEALs 1-26*, 595 U.S. ____ (2022). Here, deployability is not at issue: Senior Airman Crocker is not in a deployable status. The injury she seeks to avoid is separation from the Air Force, a fundamentally different question, particularly considering that her immediate chain of command supports her and believes she can continue to add value to the military by continuing to do her job at Barksdale Air Force Base. The Northern District of Texas today certified a class of all Navy personnel who had submitted a religious accommodation request and upheld and extended the preliminary injunction to that class.

## CONCLUSION

For the reasons outlined above, the Court should grant the request for a preliminary injunction.

Respectfully submitted this 28th day of March 2022.

/s/ *Jim Baehr*
_____
James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone : (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiff