# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FAITH N. CROCKER; CHRISTOPHER F. DUFF; WAYNE E. JOHNSON; DAVID J. SCHADWINKEL; IAN R. MCHALEY; MENDELL L. POTIER; BYRON O. STARKS, JR. | ) ) ) ) ) ) | |
| | ) | Civil Action No. 5:22-cv-757 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense; UNITED STATES DEPARTMENT OF DEFENSE; FRANK KENDALL, III, in his official capacity as United States Secretary of the Air Force; ROBERT I. MILLER, in his official capacity as Surgeon General of the United States Air Force; RICHARD W. SCOBEE, in his official capacity as Commander of Air Force Reserve Command; | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

i

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................1

**FACTUAL BACKGROUND** ..................................................................................2

   1.   Plaintiffs' Suffer Adverse Personnel Actions and Take Legal Action. ..............................2

   2.   Defendants Reluctantly Rescind Parts of the Mandate. ....................................7

**STANDARD OF REVIEW** .....................................................................................9

**ARGUMENT** .........................................................................................................10

   1.   Plaintiffs' Claims Are Not Moot Because the Court Can Still Grant "Effectual Relief." .10

     A.   Plaintiffs' Claims Are Not Moot Because Plaintiffs Have and Continue to Suffer Adverse and Unfavorable Personnel Actions Absent Judicial Remedy. ..............................10

     B.   Plaintiffs' Claims Are Not Moot Because Plaintiffs Are Still Subject to Future Harm Including the Ongoing Threat of Court-Martial Prosecution Absent Judicial Remedy.........13

   2.   Plaintiffs' Claims Are Not Moot Because Other Mootness Exceptions Apply. ...............14

     A.   Plaintiffs' Claims Are Not Moot Because of the Collateral Consequences Exception. 15

     B.   Plaintiffs' Claims Are Not Moot Because a Defendants' Voluntary Cessation of Unlawful Conduct Does Not Suffice to Moot a Case. ..........................................16

     C.   The Case is Not Moot Because it is Capable of Repetition Yet Evades Review. .........20

   **CONCLUSION** ................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*A. Philip Randolph Inst. v. Husted*,
838 F.3d 699 (6th Cir. 2016) ........................................................................ 19

*Able v. United States*,
155 F.3d 628 (2d Cir. 1998) .......................................................................... 13

*Adkins v. United States*,
68 F.3d 1317 (Fed. Cir. 1995) ....................................................................... 13

*Already, L.L.C. v. Nike, Inc.*,
568 U.S. 85 (2013) ................................................................................. 10, 17

*Arizona Alliance for Retired Americans v. Clean Elections USA*,
2023 WL 1097766 (9th Cir. Jan. 26, 2023) ....................................................... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 9

*Bennie v. Munn*,
822 F.3d 392 (8th Cir. 2016) ........................................................................ 15

*Bond v. United States*,
47 Fed. Cl. 641 (2000) .................................................................................. 13

*Bowman v. Schwarzenegger*,
2009 U.S. Dist. LEXIS 24678 (E.D. Cal. Mar. 23, 2009) ................................. 15

*Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ................................................................................ 21, 21

*Chafin v. Chafin*,
568 U.S. 165 (2013) ................................................................................ 10, 14

*City of Mesquite v. Aladdin's Castle*,
455 U.S. 283 (1982) ................................................................................ 17, 18

*Ctr. for Individual Freedom v. Tennant*,
706 F.3d 270 (4th Cir. 2013) ........................................................................ 15

*Dean Foods Co. v. Tracy*,
990 F. Supp. 646 (W.D. Wis. 1997) ............................................................... 15

*Doe v. Trump*,
275 F. Supp. 3d 167 (D.D.C. 2017) ............................................................... 13

*Ethredge v. Hail*,
996 F.2d 2 ...................................................................................................... 2

*FEC v. Wis. Right to Life, Inc.*,
551 U.S. 449 (2007) ...................................................................................... 20

*Firefighters Local Union No. 1784 v. Stotts*,
467 U.S. 561 (1984) ...................................................................................... 15

*First Nat'l Bank v. Bellotti*,
435 U.S. 765 (1978) ...................................................................................... 20

*Forbes v. Arkansas Educ. Television Communication Network Found.*,
    982 F.2d 289 (8th Cir.1992) ........................................................................................... 2
*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
    528 U.S. 167 (2000) ..............................................................................................16, 17
*Frontiero v. Richardson*,
    411 U.S. 677 (1973) ................................................................................................... 13
*Haselrig v. United States*,
    53 Fed. Cl. 111 (2002) ............................................................................................... 13
*Honig v. Doe*,
    484 U.S. 305 (1988) ................................................................................................... 20
*Kingdomware Tech., Inc. v. United States*,
    136 S. Ct. 1969 (2016) ............................................................................................... 20
*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) ...................................................................................... 9
*Medicine v. McCulloch*,
    544 Fed. Appx. 699 (9th Cir. 2013) ........................................................................... 2
*Murphy v. United States*,
    993 F.2d 871 (Fed. Cir. 1993) ................................................................................... 13
*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) ................................................................................................... 12
*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
    135 F.3d 1260 (9th Cir. 1998) ................................................................................... 18
*Northland Family Planning Clinic, Inc. v. Cox*,
    487 F.3d 323 (6th Cir. 2007) ..................................................................................... 19
*Opulent Life Church v. City of Holly Springs Miss.*,
    697 F.3d 279 (5th Cir. 2012) ..................................................................................... 12
*Oster v. Wagner*,
    504 Fed. Appx. 555 (9th Cir. 2013) ............................................................................ 2
*Owens v. Brown*,
    455 F. Supp. 291 (D.D.C. 1978) ................................................................................ 13
*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007) ..............................................................................................18, 19
*Philips v. Perry*,
    106 F.3d 1420 (9th Cir. 1997) ................................................................................... 13
*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ..................................................................................... 10
*Ramsek v. Beshear*,
    989 F.3d 494 (6th Cir. 2021) ..................................................................................... 16
*Roe v. Wade*,
    93 S. Ct. 705 (1973) ................................................................................................... 20
*Sacks v. Off. of Foreign Assets Control*,
    466 F.3d 764 (9th Cir. 2006) ..................................................................................... 15
*Scarseth v. United States*,
    46 Fed. Cl. 406 (2000) ............................................................................................... 13
*Schlesinger v. Ballard*,
    419 U.S. 498 (1975) ................................................................................................... 13

*Sibron v. New York*,
    392 U.S. 40 (1968) ................................................................................................. 15
*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ................................................................................. 19
*Speech First, Inc. v. Schlissel*,
    939 F.3d 756 (6th Cir. 2019) ............................................................................18, 19
*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) .......................................................................................... 19
*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017) ......................................................................................17, 18
*Turner v. Rogers*,
    564 U.S. 431 (2011) .............................................................................................. 20
*United States v. Sanchez-Gomez*,
    138 S. Ct. 1532 ...................................................................................................... 18
*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) .............................................................................................. 20
*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) .......................................................................................... 10

## FEDERAL STATUTES

Title 10, U.S.C.
    § 843 ................................................................................................................13, 15
    § 890 ...................................................................................................................... 13
    § 892 ...................................................................................................................... 13
Title 42, U.S.C.
    § 1988 ...................................................................................................................... 7
Manual for Courts-Martial, pt. IV, §§ 25, 28, at 332, 335 (2019) available at
    https://tinyurl.com/2019MCMUCMJ ..................................................................... 13

## OTHER AUTHORITIES

Ben Wolfgang, *Lawmakers question Pentagon brass on why troops who refused COVID vaccine still face penalties*, WASH. TIMES, Feb. 28, 2023,
    https://tinyurl.com/COVID19Prosecution................................................................. 14
Department of Defense, Military Whistleblower Protection Act, Directive 7050.06, Apr. 17, 2015, incorporating Change 1, Oct. 12, 2021..............................................................7, 16
Heather Mongilio, *Pentagon Unclear How Military Would Handle End of Mandatory COVID-19 Vaccines*, USNI NEWS, Dec. 7, 2022,
    https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines ...................................................................................... 7
H.R. 7776, James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, 117th Cong………………………………………………..........................................11

## INTRODUCTION

Plaintiffs' sincerely held religious beliefs were systematically rejected by Defendants in disregard of the law and the Constitution. Each of the Plaintiffs sought reasonable religious accommodation to decline the COVID-19 vaccine injection based on sincerely-held religious beliefs. Each request was summarily denied. Each of the Plaintiffs suffered wide-ranging adverse personnel action that harmed them and will continue to harm their careers going forward. Defendants doubled down on their systematic religious discrimination for months until, faced with mounting losses in court because of legal challenges like this one, Congress ordered them to rescind their COVID-19 vaccination mandate. Defendants modified their COVID-19 vaccination requirements, but to this day, Defendants are "deeply proud" of their actions and refuse to repudiate them. Now, Defendants belatedly seek to head off a declaratory judgment that their actions are and were unconstitutional under the law and Constitution, ignore other relief to which Plaintiffs may be entitled, and avoid appropriate attorneys' fees predictably incurred in defense of Plaintiffs' constitutional and civil rights.

This Court should deny Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. Plaintiffs' claims are not moot because they can still obtain effectual relief: they have suffered adverse and unfavorable personnel actions and they remain subject to future harm including the ongoing threat of court-martial prosecution absent judicial remedy. Furthermore, mootness exceptions such as the collateral consequences exception, the voluntary cessation exception, and the capable of repetition yet evading review exceptions apply.

Defendants' citation to other cases that supposedly determined mootness do not address the questions raised by Defendants' Motion: all of the citations relate to orders or appeals on requests for preliminary injunctions, not on complete dismissal of the Plaintiffs' claims on the

merit. In fact, in one of the cases, the Plaintiff *joined* the Government in asserting mootness solely on the issue of the preliminary injunction and requested that the Court send the case back to the district court for a determination of the remaining issues:

> The case as a whole remains live, however. The district court's order denying a preliminary injunction should be vacated as moot, and the case should be remanded to the district court for further proceedings to determine whether Lt. Col. Dunn is entitled to permanent relief, including damages. *See, e.g., Arizona Alliance for Retired Americans v. Clean Elections USA*, 2023 WL 1097766 (9th Cir. Jan. 26, 2023); *Medicine v. McCulloch*, 544 Fed. Appx. 699, 700 (9th Cir. 2013); *Oster v. Wagner*, 504 Fed. Appx. 555, 555-56 (9th Cir. 2013); *Ethredge v. Hail*, 996 F.2d 2 1173, 1177 (11th Cir.1993); *Forbes v. Arkansas Educ. Television Communication Network Found.*, 982 F.2d 289, 289 (8th Cir.1992).

*Dunn v. Austin,* No. 22-15286 (9th Cir. Feb. 21, 2023) (Appellant's Supplemental Brief of February 21, 2023). The fundamental issues raised by Plaintiffs likewise remain live.

## FACTUAL BACKGROUND[1]

**1. Plaintiffs' Suffer Adverse Personnel Actions and Take Legal Action.**

Plaintiffs each suffered adverse personnel actions due to their religiously based refusal to take the COVID-19 vaccine. Plaintiff Senior Airman Faith Crocker was informed of the denial of her Religious Accommodation Request Appeal and ordered to take the COVID-19 vaccine on or about March 8, 2022, by her Commanding Officer in an email which stated that she had five days to take the COVID-19 vaccine or face imminent separation. "Any refusal to receive the COVID-19 vaccine, absent an approved exemption, may be punishable under the Uniform Code of Military Justice (UCMJ). Continued refusal will result in involuntary reassignment to the [Individual Ready Reserve]." Senior Airman Crocker was ordered to take the COVID-19 vaccine but refused.

---

[1] Plaintiffs reincorporate by reference the entirety of their Complaint (Dkt. 1) and their First Amended Complaint (Dkt. 13).

Plaintiff Lieutenant Colonel Christopher F. Duff suffered adverse personnel action because of his submission of a Religious Accommodation Request. Lieutenant Colonel Duff was threatened with separation and suffered the cancellation of a critical prerequisite assignment for his promotion because of his submission of a Religious Accommodation Request:

> On or about May 2, 2022, Lieutenant Colonel Duff was notified of the cancellation of his assignment to attend Senior Development Education (SDE) at Air War College, Maxwell AFB, AL. This school is a requirement to be eligible for promotion to the next rank of Colonel. Without it, Lieutenant Colonel Duff's chance of promoting to the next rank are effectively ended.

First Amended Complaint, Dkt. 12 at ¶ 33. Lieutenant Colonel Duff was then informed his appeal was denied and ordered to take the COVID-19 vaccine:

> On or about May 5, 2022 (three days after his assignment cancelation), he was notified that his religious accommodation appeal was denied and given the order to get vaccinated by May 16, 2022 or face administrative discipline which would end any chance of promotion to the next rank.

*Id.* at ¶ 34. Lieutenant Colonel Duff was ordered to take the COVID-19 vaccine but refused.

Plaintiff Lieutenant Colonel Wayne Johnson suffered adverse personnel action because of his submission of a Religious Accommodation Request. His appeal was denied and he was ordered by his Commanding Officer to take the COVID-19 vaccine or face consequences:

> On or about May 6, 2022, Lieutenant Colonel Johnson received correspondence from his commanding officer, Lieutenant Colonel Aaron A. Bohl, USAFR, that he had five calendar days to "1) take the vaccine 2) submit retirement request if eligible 3) refuse vaccine in writing." May 12, 2022, marked the fifth calendar day.

*Id.* at ¶ 41. Lieutenant Colonel Johnson was ordered to take the COVID-19 vaccine but refused.

Plaintiff Major David Schadwinkel suffered adverse personnel action for his submission of a Religious Accommodation Request. "On or about October 15, 2021,[2] Major Schadwinkel was ordered to receive a COVID-19 vaccine injection by October 17, 2021." *Id.* at ¶ 47. After the rejection of his appeal of his Religious Accommodation Request on or about May 6, 2022, Major Schadwinkel was again ordered to take the COVID-19 vaccine by his commanding officer, Colonel David R. Anderson, USAF. *Id.* at ¶ 50. Major David Schadwinkel was ordered to take the COVID-19 vaccine but refused.

Plaintiff Master Sergeant Ian R. McHaley suffered adverse personnel action because of his Religious Accommodation Request. His spotless reputation as a top performer has been marred and he has suffered significant stigma for his religious beliefs. He was notified in December 2021 that he had been selected to attend the First Sergeant Academy. He started attending the First Sergeant Council meetings and introducing himself to the various base agencies. His superiors and subordinates became familiar with him as a First Sergeant. Before his Religious Accommodation Request had been approved or denied, he was notified in April 2022 that his assignment had been cancelled due solely to his vaccination status. Fellow Airmen noticed the removal, and since typically the only time a Senior Non-Commissioned Officer is removed from such a position is for disciplinary infractions, Master Sergeant McHaley is frequently asked why he is no longer a First Sergeant. He has been informed by close associates that the general consensus is that he must have committed a grave offense. This stigma has caused Master Sergeant McHaley and his family distress coupled with the stress caused by the threat of involuntary separation. Were he called to testify, Master Sergeant McHaley would state:

> The loss of the honor of being a First Sergeant and the prominence the positions holds is something I will never get to know. Most return to their career fields

---

[2] The order is dated October 15, 2021, while the medical request denial is dated October 16, 2021.

earning SMSgt (E-8) out of honorably serving as a First Sergeant. Having the duty title on my records and the loss of any experiences I would have had as a First Sergeant cannot be quantified. I won't be able to tell my posterity that I served as a First Sergeant.  I worked my entire career to become a First Sergeant and to have it taken away the way it was and then to be left wondering what could have been is something that will never go away. It is impossible to place a number on what losing this opportunity has done to my family and I, the damage done can never be undone.

Master Sergeant McHaley was ordered to take the COVID-19 vaccine but refused.

Plaintiff Staff Sergeant Mendell L. Potier suffered adverse personnel action because of his Religious Accommodation Request. Staff Sergeant Potier is a drilling reservist who was slated for a deployment that would have been a significant financial help to his family and would have accounted for a tangible increase in annual drill points that would one day translate into increased reserve retirement pay. Because of his Religious Accommodation Request, Staff Sergeant Potier was removed from the deployment. Were he called to testify, Staff Sergeant Potier would state:

I was personally removed from my deployment spot in which my kids and I financially relied on heavily. These orders estimated closely to $60K in pay that I now cannot account for. This action by the Department of Defense caused myself and family to go through heavy depression and financial difficulties.

Staff Sergeant Potier has been repeatedly denied drilling travel reimbursements after submission of his Religious Accommodation Request. Staff Sergeant Potier was ordered to take the COVID-19 vaccine but refused.

Plaintiff Airmen First Class Byron O. Starks, Jr., suffered adverse personnel action because of his Religious Accommodation Request.[3] He was ordered to take the COVID-19

---

[3] The Government has previously moved to dismiss Airman First Class Starks' claims and the matter is pending before the Court. However, Airmen First Class Starks' treatment and separation are relevant to the Court's determination on this broader Motion to Dismiss, which presumably would also affect Airman First Class Starks.

vaccine injection and refused to do so. He was assigned to perform demeaning tasks in a separate platoon for months. Airman First Class Starks was then separated from the Air Force on June 23, 2022, with a non-honorable characterization of discharge. Dkt. 27. Although the Government claims he was separated for erroneous enlistment (medical reasons), his characterization disregards the laws requiring Honorable discharges for such separations and he was given a non-honorable characterization of discharge. *Id.* His characterization of discharge will have a lifelong impact on his ability to gain educational benefits and future job prospects. *Id.* Faithful to the end, Airman First Class Starks still seeks to return to serve his country in the Air Force but has been blocked by the separation code given to him by Defendants.

To redress their injuries, Plaintiffs sought legal counsel to defend their Constitutional rights and filed this Complaint on March 20, 2022, and First Amended Complaint on May 31, 2022, alleging unlawful and unconstitutional actions. Plaintiffs' Prayer for Relief sought six remedies:

1) A declaratory judgment that Defendants' vaccination policies challenged in this Amended Complaint violate Plaintiffs' rights under the First Amendment to the United States Constitution;

2) A declaratory judgment that Defendants' vaccination policies challenged in this Amended Complaint violate Plaintiffs' rights under the Administrative Procedure Act;

3) A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Amended Complaint;

4) An order declaring unlawful and setting aside Defendants' vaccination policies;

5) Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

6) All other further relief to which Plaintiffs may be entitled.

## 2. Defendants Reluctantly Rescind Parts of the Mandate.

Defendants lobbied against passage of the National Defense Authorization Act that required the COVID-19 military vaccine mandate to be rescinded.

> Secretary of the Navy Carlos Del Toro spoke against removing the mandate. . . Congress needs to understand the secondhand consequences of their decisions, the Navy secretary said. "But unquestionably it'll create almost two classes of citizens in our services," Del Toro said. "Those that can't deploy and those that can deploy. . ."

Heather Mongilio, *Pentagon Unclear How Military Would Handle End of Mandatory COVID-19 Vaccines*, USNI NEWS, Dec. 7, 2022, https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines.

Over their protestations, Congress passed the bill, which contained the following language:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."

H.R. 7776, James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, 117th Cong., https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf.

On January 10, 2023, in response, the Secretary of Defense released a memo entitled Rescission of August 23, 2021, and November 30, 2021, Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces. Gvmt Ex. 1, Sec'y of Def. Mem. (Jan. 10,

2023). In it, he stood by the unlawful and unconstitutional process conducted by Defendants, calling himself "deeply proud" of Defendants' COVID-19 "leadership." *Id.* The Secretary connected the vaccine requirements with the military's "compelling interests in mission accomplishment" and reaffirmed that commanders have the "responsibility and authority" to vindicate those interests. *Id.* He stated that this authority included "the ability to maintain . . . *good order and discipline*," a phrase associated with military justice matters. *Id.* (emphasis added). He implied that separations at least *partially* related to COVID-19 vaccine refusal would continue. *Id.* ("No individuals currently serving in the Armed Forces shall be separated *solely* on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administration, or medical grounds."). He stated that COVID-19 vaccination status of personnel would continue to affect "deployment, assignment, and other operational decisions" for those who refused vaccination. *Id.* ("Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions . . .").

On February 10, 2023, Lieutenant General John P. Healy released a memo entitled Air Force Reserve (AFR) Guidance for COVID-19. Gvmt Ex. 4, Chief of Air Force Reserve Mem. (Feb. 10, 2023). In it he stated that the Air Force Personnel center would develop processes to remove "*qualifying* adverse actions." *Id.* The memo does not state which adverse actions do or do not qualify for removal. *Id.*

On February 24, 2023, Deputy Secretary of Defense Kathleen Hicks released a memorandum entitled "Guidance for Implementing Rescission of August 23, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the

Armed Forces." Gvmt Ex. 5, Feb. 24, 2023, Deputy SECDEF Memo. The memo stated, "The January 10, 2023 memorandum recognizes that other standing Departmental policies, procedures, and processes regarding immunizations remain in effect, including the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions…" *Id.* at 1-2. Deputy Secretary Hicks connects the necessity of vaccine requirements with "changing public health conditions." *Id.* at 1.

Also on February 24, 2023, Secretary of the Air Force Frank Kendall released a memo entitled "Department of the Air Force (DAF) Guidance on Removal of Adverse Actions and Handling of Religious Accommodation Requests." Gvmt Ex. 6, Sec'y of Air Force Mem. (Feb. 24, 2023). Secretary Kendall defends the adverse actions Plaintiffs endured: "At the time the actions were taken, they were *appropriate, equitable, and in accordance with valid lawful policy* in effect at the time." *Id.* Secretary Kendall notes that removal of adverse actions in personnel files "is now *appropriate in some circumstances.*" *Id.* Secretary Kendall does not clarify the circumstances in which it is appropriate to leave adverse actions in personnel files that Plaintiffs suffered because of their religious objections. *Id.*

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must accept as true all the factual allegations in a plaintiff's complaint and view the facts in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). For motions to dismiss based on Rule 12(b)(6) a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

### 1.   Plaintiffs' Claims Are Not Moot Because the Court Can Still Grant "Effectual Relief."

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, L.L.C. v. Nike, Inc.*, 568 U.S. 85, 91 (2013). The Government bears the burden here of demonstrating mootness applies. *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("the Government, not petitioners, bears the burden to establish that a once-live case has become moot."). In fact, a case "becomes moot *only when it is impossible* for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.*

### A.   *Plaintiffs' Claims Are Not Moot Because Plaintiffs Have and Continue to Suffer Adverse and Unfavorable Personnel Actions Absent Judicial Remedy.*

Adverse or unfavorable personnel actions are well recognized in the law and described in Defendants' own directives in other contexts. Department of Defense Directive 7050.06 defines "personnel action" as:

> Any action taken on a Service member that affects, or has the potential to affect, that member's military pay, benefits, or career. Such actions include, but are not limited to:

> Threatening to take any unfavorable action.
> Withholding, or threatening to withhold, any favorable action.
> Making, or threatening to make, a significant change in the duties or responsibilities of a Service member not commensurate with the member's grade.
> . . .
> Personnel actions may be either favorable or unfavorable.
> Favorable personnel actions are those that are reasonably expected to result in a positive impact on the Service member's military pay, benefits, or career. They do not include inconsequential matters.
> Unfavorable personnel actions are those that are reasonably expected to result in an adverse impact on the Service member's military pay, benefits, or career. They do not include inconsequential matters.

Department of Defense, Military Whistleblower Protection Act, Directive 7050.06, Apr. 17, 2015, incorporating Change 1, Oct. 12, 2021, https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/705006p.pdf.

Plaintiffs have suffered adverse, unfavorable personnel actions including threats of involuntary administrative separation, removal from positions of responsibility essential for promotion, removal from critical training opportunities essential for promotion, removal from anticipated deployments with wide-ranging economic consequences (including loss of deployment pay and career retirement points that will affect their retirement pay), involuntary separation from the Air Force, and orders to take the vaccine backed by threats of court-martial prosecution. These actions have harmed Plaintiffs and will continue to harm them going forward.

Defendants attempt to evade judicial review of their actions by narrowly defining the concept of "adverse action." The Department of Defense's own Directive 7050.06 demonstrates that unfavorable actions are far broader than just negative paperwork (that Defendants can selectively choose to remove): "Unfavorable personnel actions are those that are reasonably expected to result in an adverse impact on the Service member's military pay, benefits, or career." *Id.* All of the actions suffered by Plaintiffs and outlined above qualify.

New DoD and Air Force policies continue the illegal discrimination and constitute a de

facto mandate: DoD and the Air Force admit their intention to continue using vaccination status to make a wide range of decisions involving Plaintiffs' futures, while eliminating any ability to request religious accommodation. *See* Gvmt Ex. 1, Sec'y of Def. Mem. (Jan. 10, 2023). Based on the Government's previous unlawful conduct, its failure to remedy the harms its unlawful conduct caused, and its public statements of intent to treat Plaintiffs as second-class citizens, continuing harm is apparent on the face of Defendants' statements.

Defendants have done nothing to remedy these harms. All Plaintiffs face potential denial of promotions, assignments, and deployment opportunities. Master Sergeant McHaley has not been returned to the position of responsibility of First Sergeant and is still suffering the stigma and indignity of his unlawful removal from that position. Staff Sergeant Potier has received nothing for the loss of his deployment opportunity and the financial effect the loss had on his family nor have Defendants done anything to make up for the drill points that were denied him or the lifelong impact on his retirement pay.

A live controversy exists because the Court can still grant Plaintiffs effectual relief. The Court can still declare the continuing discriminatory policies unlawful as requested. Precedent from the Supreme Court and the Fifth Circuit hold that a case is not mooted if the challenged conduct continues after the repeal of an unconstitutional policy. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) ("There is no mere risk that [Defendant] will repeat its allegedly wrongful conduct; it has already done so."); *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (holding a case was not moot where a defendant "doubled down" on its challenged action after repealing a policy).

Courts may also adjudicate claims regarding backpay and assignments of military duties

where there is statutory authority to do so. *Adkins v. United States*, 68 F.3d 1317, 1325 (Fed. Cir. 1995) (claim for back pay is justiciable); *Scarseth v. United States*, 46 Fed. Cl. 406, 413 (2000) (same); *Haselrig v. United States*, 53 Fed. Cl. 111, 120 (2002) (same); *Bond v. United States*, 47 Fed. Cl. 641, 651 (2000) (military duty assignment review); *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). Indeed, courts are not compelled "to abdicate their responsibility to decide cases and controversies merely because they arise in the military context." *Owens v. Brown*, 455 F. Supp. 291, 300 (D.D.C. 1978); *Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997) (addressing merits); *Able v. United States*, 155 F.3d 628 (2d Cir. 1998) (same); *Doe v. Trump*, 275 F. Supp. 3d 167 (D.D.C. 2017) (addressing merits of claims). The United States Supreme Court has reviewed, and permitted the review, of assignments, benefits, housing, and other challenges. *Schlesinger v. Ballard*, 419 U.S. 498 (1975) (promotion policies); *Frontiero v. Richardson*, 411 U.S. 677 (1973) (housing, medical, and dental benefits).

   B. *Plaintiffs' Claims Are Not Moot Because Plaintiffs Are Still Subject to Future Harm Including the Ongoing Threat of Court-Martial Prosecution Absent Judicial Remedy.*

   All Plaintiffs received orders to take the COVID-19 vaccine injection and all refused. Defendants still openly maintain these were "valid" and "lawful" orders. *See, e.g.,* Ex. 6, Gov't Motion to Dismiss Case, Dkt. 34. Accordingly, for the next five years each Plaintiff remains subject to criminal prosecution for violations of either Article 90 or Article 92 of the Uniform Code of 10 U.S.C. § 843 (five-year statute of limitations); *id.* § 890 (Article 90); *id.* § 892 (Article 92). If convicted, each faces punishment of up to five years in a military prison for these violations. Manual for Courts-Martial, pt. IV, §§ 25, 28, at 332, 335 (2019) available at https://tinyurl.com/2019MCMUCMJ.

   Defendants have provided no enforceable commitment that they will not prosecute

Plaintiffs. On the contrary, Defendants have openly discussed the possibility of prosecution in sworn testimony. On February 28, 2023, top Pentagon officials acknowledged in testimony before Congress "that the Defense Department is still reviewing for potential 'disciplinary procedures' numerous cases of active-duty troops who refused the shot while the mandate was in force." Ben Wolfgang, *Lawmakers question Pentagon brass on why troops who refused COVID vaccine still face penalties*, WASH. TIMES, Feb. 28, 2023, https://tinyurl.com/COVID19Prosecution. The Undersecretary of Defense for Personnel and Readiness, Gilbert Cisneros, admitted "[t]hey're reviewing the cases because . . . they [disobeyed] a lawful order." *Id.* The fact that DoD officials admit disciplinary procedures are still on the table for any refusal of a "lawful order" makes clear that the decision as to whether to pursue criminal prosecutions in any of these cases is currently a matter of grace subject to the whim of the same Defendants who established the unconstitutional policy in the first place.[4]

A declaratory judgment from the Court that the Defendants' COVID-19 mandatory vaccination policy violated Plaintiffs' rights under the First Amendment and the Administrative Procedure Act and was unlawful as requested in the First Amended Complaint would provide relief. Such a judgment would forever remove the ability for the Government to argue in these courts-martial that Plaintiffs violated a "lawful order" – illegality of the order being a defense to the charge. Since it not "impossible for a court to grant any effectual relief whatever to the prevailing party," the case is plainly not moot. *Chafin*, 568 U.S. at 172.

### 2.  Plaintiffs' Claims Are Not Moot Because Other Mootness Exceptions Apply.

Plaintiffs' claims are likewise not moot because other mootness exceptions apply,

---

[4] On information and belief, even after rescission of the mandate, the Air Force is continuing to maintain a database of vaccine refusers that it can use to punish prior vaccine objectors, including religious objectors.  And these records can and are being used against such objectors to date in areas such as assignments and promotions.

including the collateral consequences exception, the voluntary cessation exception, and the capable of repetition yet evading review exception.

   A.  *Plaintiffs' Claims Are Not Moot Because of the Collateral Consequences Exception.*

   Under the "collateral consequences" exception, when the plaintiff's primary injury has ceased, the case is not moot if the challenged conduct continues to cause other harm the court is capable of remedying. *Sibron v. New York*, 392 U.S. 40, 53-59 (1968).  A continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984).

   Here, the plaintiffs' primary injury was the existence of a discriminatory accommodation process, the punishments inflicted on those refusing the vaccine for religious reasons, and for those pushed out like Airman First Class Starks, any less-than-honorable discharges.  Even assuming all these primary harms were remedied, which they were not, collateral consequences still remain. For example, named Plaintiffs received orders to vaccinate, and they did not comply. Each remains subject to criminal prosecution at any time during the full five-year statute of limitations.  10 U.S.C. § 843.  Adding to the threat, the Air Force is purportedly maintaining a database to potentially take such action in the future. Thus, on this ground alone, the appeal is not moot. *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) (violation of repealed statute does not foreclose relief if the statute was violated); *Bowman v. Schwarzenegger*, No. CIV S-07-2164 FCD KJM P, 2009 U.S. Dist. LEXIS 24678 (E.D. Cal. Mar. 23, 2009) (same); *Dean Foods Co. v. Tracy*, 990 F. Supp. 646 (W.D. Wis. 1997) (claim not moot where enforcement possible); *Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) (same); *Ctr. for Individual Freedom v. Tennant*, 706 F.3d 270, 293 (4th Cir. 2013) (possibility of enforcement

for past violation rendered matter not moot); *Ramsek v. Beshear*, 989 F.3d 494, 500 (6th Cir.

2021) (no mootness until criminal statute of limitations runs).

> **B. *Plaintiffs' Claims Are Not Moot Because a Defendants' Voluntary Cessation of Unlawful Conduct Does Not Suffice to Moot a Case.***

Defendants voluntarily ceased much of their unlawful conduct – and they can voluntarily

return to it. The plain language of the relevant portion of the NDAA (§ 525, pages 177- 178) was

actually somewhat limited:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of
> Defense shall rescind the mandate that members of the Armed Forces be
> vaccinated against COVID-19 pursuant to the memorandum dated August 24,
> 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of
> Department of Defense Service Members."

H.R. 7776, James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, 117th

Cong., https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf.

Without question, the NDAA only required rescission of the existing Vaccine Mandate.

The NDAA does not prevent the Government from re-imposing another vaccine mandate (even

an identical one) at a later date, it does not require halting separations for refusing airmen

(particularly where the Government continues to insist the orders were lawful), it does not

require the removal of adverse actions taken against refusing airmen, it does not bar criminal

prosecutions for refusing airmen, and it does not require rectifying any other harms.

Further, the Secretary's January 2023 Memorandum contains his continued insistence –

even "pride" – that everything the Government did was lawful, which demonstrates a return to

past unlawful practices is still a danger. Ex. 1, Gov't Motion to Dismiss Case, Dkt. 34.

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not

suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167,

189 (2000). "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Id.* (citing *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982)).

As the United States Supreme Court observed in *Already, L.L.C.*, 568 U.S. at 91:

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.

> Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the **formidable burden** of showing that it is **absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur.

*Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000)) (emphasis added).

In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that a government actor's voluntary change in policy does not moot a case. Here, not only does the Government not promise to "never do it again," but in light of the Secretary's boast, there is significant reason to believe the Government will do it again. The Deputy Secretary's remarks regarding the state of the COVID-19 emergency (additional possible outbreaks) adds to this belief.

The Government argues this is not a voluntary cessation case because Congress required rescission of the Vaccine Mandate. The Government ignores the fact the NDAA did not require halting adverse actions against refusing airmen or require removing adverse actions from their records. Rather, the Government voluntarily promised to do additional things at an unspecified future date in light of litigation like this. And the NDAA does not prohibit reimposition of the same policy.

Significant to the voluntary cessation issue, the Secretary voluntarily directed certain (carefully crafted) actions not required by the NDAA:

> No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds. … Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation. *Id.*

The Secretary's mere temporary lifting of parts of the Vaccine Mandate does not come close to meeting the Government's "formidable" burden. The Government has "neither asserted nor demonstrated that [they] will never resume the complained of conduct" despite numerous opportunities to do so. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998); *cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding "the rescission of the policy does not render this case moot").

The Government could have and should have confirmed it will not reimpose the vaccine mandate. Instead, the Government "vigorously defend[s]" the legality of its approach. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). In such circumstances, courts do not dismiss a case as moot. *See City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 288-89 (1982).

Courts take into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Where, as here, "the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation

moots the claim." *Id.* Steps taken in the midst of litigation to remove and/or temporarily discontinue certain, but not all, adverse actions are entitled to no weight whatsoever. *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir. 2007).

And, most important to the mootness inquiry is the fact that the Government "vigorously defend[s] the constitutionality of its … program." *Speech First, Inc.*, 939 F.3d at 770 (citing *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). This "authority to reinstate [the challenged policies] at any time" by officials "with a track record of 'moving the goalposts'" subjects Plaintiffs to a credible threat of a reimposed, and just as discriminatory, vaccine mandate. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021).

Indeed, even applying the more relaxed standard sometimes used when the defendant is a government actor, voluntary cessation still applies. In such cases, "(1) the absence of a controlling statement of future intention [not to repeat the challenged policy]; (2) the suspicious timing of the change; and (3) the [governmental entity's] continued defense of the challenged polic[y]" are significant. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020). All of these factors are met here.

First, the Government could have promised *not* to reimplement the policy but did not do so. Second, the Government continues to defend the repealed policy, publicly stating that its Vaccine Mandate is and was a lawful order. Third, and just recently, the Government testified before Congress that airmen continue to face adverse action for their refusals. Even under a more relaxed standard, the appeal is not moot.

Finally, the Supreme Court holds that in addition to a court retaining the ability to hear a

case after voluntarily cessation, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). "The necessary determination is that there exists some cognizable danger of recurrent violation…." *Id.* That is the case here.

    *C.  The Case is Not Moot Because it is Capable of Repetition Yet Evades Review.*

"The capable of repetition yet evading review exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).  Both are present here.

First, given the rapidly changing COVID-19 landscape and the changes in policy throughout the DoD, the duration of the Vaccine Mandate was likely going to be "too short to be fully litigated prior to cessation or expiration." *See Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (two years is too short); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12 months is too short); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months is too short); *S. Pac. Terminal Co. v. Interstate Commerce Com.*, 219 U.S. 498, 515 (1911) (two years is too short); *Roe v. Wade*, 93 S. Ct. 705 (1973) (266 days is too short). Under the first element, a case evades review if its duration is too short to receive "complete judicial review," including review by the Supreme Court. *First Nat'l Bank*, 435 U.S. at 774.

When analyzing the second element, courts are concerned with whether the conduct was "capable of repetition and not … whether the claimant had demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). Plaintiffs just need to show "a reasonable expectation" that the challenged action will reoccur and do not need to demonstrate with "mathematical precision" that they will be subject to the same illegal

conduct. *Id*. In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court held that a church's First Amendment challenge to New York's COVID-19 lockdown orders was not moot because the lockdown orders were capable of repetition, yet evading review. The church "remain[ed] under a constant threat" the government would reinstitute a lockdown in its area. *Id*. at 68. Because the challenged action was too short in duration to be fully litigated prior to cessation, and there was a reasonable expectation the church would be subject to the same action in the future, the case was not moot. *Id*.

Here, Plaintiffs have a reasonable expectation the challenged action will recur. The NDAA only forced the Government to rescind the Vaccine Mandate. Consequently, the Government continues to claim the power to make decisions about unvaccinated airmen that will unlawfully harm their careers, while providing no assurances that they will not continue to violate RFRA. The Government also claims the power to institute an identical and more widespread vaccine mandate at any time, and it continues to assert a compelling interest in doing so. And, it also claims the power to punish past objectors because the order to vaccinate, allegedly, was "lawful." The capable of repetition exception is met.

**CONCLUSION**

For the reasons outlined above, the Plaintiffs respectfully request that the Court deny the Motion to Dismiss and address the fundamental issues raised by Plaintiffs: the past, current, and future abuse of their statutory and constitutional rights.

Respectfully submitted this 13th day of April, 2023.

James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone : (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiffs